2000 SD 42

**Linda L. WUEST, Appellant,**

v.

**WINNER SCHOOL DISTRICT 59–2 and Its Board of Education consisting of Rocky Blare, Denice Novotny, Jim Day, Wayne Meyer, Doug Percy, Clint Vanneman, and Dan Viedt, Appellees.**

No. 21062.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 2000.

Decided March 29, 2000.

George W. Wuest, Mitchell, for appellant.

Paul E. Jensen of Jensen and Massa Winner, for appellees.

Mark Barnett, Attorney General, Michele K. Bennet, Assistant Attorney General, Pierre, for intervenor State of South Dakota.

VON WALD, Circuit Judge.

[¶ 1.] Linda Wuest appeals a trial court decision affirming the Winner School Board's decision not to renew her teaching contract. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Linda Wuest began teaching in the Winner School District (District) in 1985 and was subject to periodic evaluations pursuant to District policy. From 1985 through 1995, Linda generally received good evaluations with the exception of one done by Judy Audiss in 1993. Audiss was the principal and Linda's supervisor from 1990 to 1993. Audiss had previously given Linda positive evaluations. Following the 1993 evaluation indicating Linda was having problems, Audiss placed Linda on a plan of assistance to help her in her work.

[¶ 3.] In the 1995–96 school year, Linda was supervised and evaluated by Winner elementary principal Mary Fisher. Fisher also did Linda's evaluations for 1997–98, the evaluations at issue in this case. In October 1997, Fisher did Linda's first evaluation for that academic year. Evaluations were done using criteria contained within the District's teacher evaluation system. Fisher noted a number of deficiencies and found Linda was performing below District standards in most areas. After receiving this evaluation, Linda was on notice that she would be placed on a plan of assistance. Plans of assistance are used by school districts to help teachers who are not performing as well as they could be. They indicate the areas in which the teacher needs to improve and convey information on how to achieve the level of improvement that is expected. The ultimate goal of any plan of assistance is to help the teacher make sufficient improvements to continue to be retained by the school district.

[¶ 4.] After receiving notice of Fisher's intended plan of assistance, Linda requested a second evaluation. She also indicated she would like to have her father, acting as her counsel in this case, attend the next meeting. Linda and her father met with her superiors in October 1997 and Fisher and middle school principal, David Nicholas, were also in attendance. Linda and her father requested that Nicholas conduct an independent evaluation and Nicholas agreed. Nicholas completed his evaluation on October 31, 1997 after observing Linda on October 28. The Nicholas evaluation also found Linda failed to meet District standards.

[¶ 5.] Following the Nicholas evaluation, Linda was put on a plan of assistance. The plan, also prepared by Nicholas, noted the deficiencies in Linda's evaluations, set forth the goals to be reached, indicated the improvements she could make and noted what assistance would be available from the school administration. Further, the plan noted a number of future evaluations that would be conducted as well as the time period the plan would be in place and the standards that needed to be met by the conclusion of the plan. Also listed were the consequences for Linda if she failed to meet the standards of the plan.

[¶ 6.] Under the plan, Linda was evaluated by Fisher in December 1997. In February 1998, she was evaluated once by Nicholas and once by Audiss, the special education director and rural schools supervisor. All three evaluations found Linda was still performing below District standards. Testimony later given by the three evaluators indicated Linda failed to regularly perform her obligations as a teacher

with the degree of skill expected of teachers and regularly displayed by other teachers in similar situations. Fisher and Nicholas testified that, in their professional opinions, Linda lacked the ability to discharge her obligations as a teacher in the Winner School District. The evaluators further testified Linda had demonstrated incompetence arising from a course of conduct and a series of incidents over the years.

[¶ 7.] Specific aspects of Linda's teaching that bothered the evaluators were documented. In November 1997, Fisher documented her concern about Linda's grading criteria. When Fisher asked Linda what criteria she used for grades, she replied, "criteria?" When Fisher further inquired about how Linda would grade her students her reply was, "I just sort of remember how each one is doing." Fisher continued to discuss the matter with Linda, asking her if she kept records of grades. Linda indicated she did not and would sometimes ask other teachers how the children were doing. Linda contends that Fisher and others who had evaluated her had it in for her because of a personality conflict.

[¶ 8.] In addition to Fisher's concern about Linda's grading practices, there were also complaints to the school from parents. During the 1997–98 school year Linda was a Title I teacher and was supposed to assist students who needed remedial help in math and reading. She consistently worked with three or four students at a time and occasionally worked with an entire classroom. Parents complained about their children not being helped in class and expressed concerns that the children were actually becoming more confused. There were also written complaints from parents who felt Linda should be dismissed. Five sets of parents requested that their children be removed from Linda's program. Three of these families worked out agreements with the school while two actually did remove their children from Linda's classroom.

[¶ 9.] On March 9, 1998, the Winner School Board (Board) adopted the recommendation of the administration and voted not to renew Linda's teaching contract at the conclusion of the 1997–98 school year. The Board took this action immediately after an executive session that included the school administration. Although Linda and her counsel also asked to be included in the session, their request was denied. On March 10, 1998, a notice of non-renewal was served on Linda pursuant to SDCL 13–43–6.2. Linda then requested a hearing before the Board. After making her request, Linda appealed to circuit court and obtained an injunction to stop the Board from holding a hearing. Following a hearing in circuit court, the court dissolved the injunction and permitted the Board to continue with a hearing.

[¶ 10.] The hearing was held before the Board on April 8 and 9, 1998. Evidence was heard from Linda, who was represented by counsel, and from the administration of the District. After hearing all the evidence, the Board deliberated and voted not to renew Linda's contract.

[¶ 11.] Linda appealed the Board's decision to circuit court. The circuit court held a trial on December 14, 1998 and later issued findings of fact and conclusions of law affirming the decision of the Board. Linda then filed this appeal.

### STANDARD OF REVIEW

[¶ 12.] This Court recently reiterated the standard under which we must decide an appeal such as this:

A proceeding in circuit court on an appeal pursuant to SDCL 13–46–1 is a trial de novo. On appeal to the circuit court, the court may determine the legality of that decision. *Strain v. Rapid City School Bd.*, 447 N.W.2d 332, 338 (S.D. 1989). However, great deference is given to the good faith determinations of school boards on decisions of whether to renew a teacher's contract. *Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21, 25 (S.D.1989). The appeal to the circuit court is not a trial de novo in the true sense of the phrase, as it has the limited

function of receiving evidence for the sole purpose of determining the legality, and not the propriety, of the school board's decision. *Riter v. Woonsocket School Dist. No. 55–4*, 504 N.W.2d 572, 574 (S.D.1993). The determination of legality is a two-pronged process: (1) whether the School Board acted legally, and (2) whether the School Board's decision was arbitrary, capricious or an abuse of discretion. Id. On appeal to this Court, we review facts under the clearly erroneous standard, however, questions of law are reviewed de novo. *Aman v. Edmunds Cent. Sch. Dist.*, 494 N.W.2d 198, 199 (S.D.1992).

*Hughes v. Stanley County School Bd.*, 1999 SD 65, ¶ 15, 594 N.W.2d 346, 351.

## DECISION

[¶ 13.] Linda raises thirteen issues. Both the Board's brief and the brief submitted by the state narrow the issues down to three or four. This Court will analyze the case under the two-prong test outlined above and will also resolve an issue over the Board's subject matter jurisdiction. All relevant issues can be disposed of through a discussion of the two-step analysis. The other issues submitted by Linda are without merit and will not be discussed.

## ISSUE ONE

[¶ 14.] **Did the Board have subject matter jurisdiction?**

▆▆▆▆ [¶ 15.] Questions over subject matter jurisdiction have no time limitation and may even be raised for the first time on appeal. *State ex rel. Freeman v. Sadlier*, 1998 SD 114, ¶ 10, 586 N.W.2d 171, 174; *Matter of MAC*, 512 N.W.2d 152, 154 (S.D. 1994). This issue must be discussed first for if it is found that the Board had no jurisdiction all other issues are moot.

[¶ 16.] The Board held its regular meeting on March 9, 1998. During an executive session, several administrators recommended that Linda's contract not be renewed for the 1998–99 academic year. The following day Linda was served with notice pursuant to SDCL 13–43–6.2 and 13–43–6.3 that her contract would not be renewed. The required notice also informed her she had a right to a hearing in front of the school board. Linda requested a hearing, but appealed to the circuit court before the hearing was held and obtained an ex parte injunction staying the proceedings. A hearing was later held in front of the circuit court which dissolved its injunction and allowed the Board's hearing to continue. The Board's hearing was finally held on April 8 and 9, 1998. Linda now contends that, because of the appeal to the circuit court, the Board did not have subject matter jurisdiction to hold the hearing or to decide whether or not to renew her contract. We disagree.

[¶ 17.] Linda cites several cases to argue the circuit court and the Board could not retain jurisdiction over the same matter at the same time. However, a reading of these cases indicates the courts were writing about cases appealed to a higher tribunal and then sent back from the higher tribunal to the lower one. The cases indicate it is the higher tribunal, not the lower one, that loses jurisdiction once the case is remanded. *State Bank of Beaver Crossing v. Mackley*, 118 Neb. 734, 226 N.W. 318 (1929); *County of Douglas v. Burts*, 2 Neb.App. 90, 507 N.W.2d 310 (1993). Another case cited by Linda can also be distinguished from the case at hand. In *Application of Koch Exploration Co.*, 387 N.W.2d 530 (S.D.1986), the decision of an administrative board was appealed to the circuit court which remanded the matter back to the board. The decision was then appealed to this Court which stripped the board of jurisdiction pending the appeal.

[¶ 18.] As indicated by the statutory scheme which covers Linda's situation, it is clear the legislature intended the Board to have jurisdiction to decide whether or not to renew her contract. SDCL ch 13–43. Moreover, the above cases indicate that when the circuit court remanded the case back to the Board the circuit court lost its

jurisdiction. *Mackley, supra; Burts, supra.*

[¶ 19.] The District cites precedent from the United States Supreme Court holding that jurisdiction can be shared. In *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), the Court held that as long as the continuation of the administrative process does not interfere with or otherwise act inconsistently with what the court has done, the rest of the administrative process may continue. We have also recognized the applicability of this doctrine in South Dakota. *See Matter of Est. Certain Terr. Elec. Boundaries,* 318 N.W.2d 118 (S.D.1982). Since the circuit court did not make a substantive decision on the merits of Linda's case, we cannot say the Board acted inconsistently with the court. Under either Linda's or the District's authorities it is clear the Board retained subject matter jurisdiction in this matter.

## ISSUE TWO

[¶ 20.] **Did the School Board act legally when it voted not to renew Linda's contract?**

[¶ 21.] Linda questions the constitutionality of the process used by the Board as well as the constitutionality of the statutory scheme that dictates the process. Since the first prong of our test is to determine the legality of the Board's actions, Linda's constitutional questions are properly discussed here.

[¶ 22.] First, Linda argues her due process rights were denied when she and her attorney were denied access to the executive session of the Board on March 8, 1998. It was at this meeting that the Board made its initial decision not to re-

new Linda's contract for the following school year.

[¶ 23.] Under SDCL 1–25–2, executive or closed meetings of public boards may be held to discuss the qualifications, competence, performance, character or fitness of any public officer or employee or prospective public officer or employee. Other authorities also hold that executive sessions excluding the public are proper to address personnel matters or matters pertaining to the dismissal of an employee. 2 Am.Jur. 2d *Administrative Law* § 103 (1994). However, such authorities also state that while such meetings are closed to the general public, they are not supposed to be closed to the employee at issue. *Id. See also Neal v. Pike Tp.,* 530 N.E.2d 103 (Ind.Ct.App.1988).

[¶ 24.] In *Neal, supra,* a township trustee presented evidence against an employee of the fire department in a closed executive session in the employee's absence and without his knowledge. The *Neal* court held the employee was denied due process. *Id.* The case at hand is distinguishable. There is no evidence in the record that the Board did anything during the executive session but receive the administrators' recommendations not to renew Linda's contract. The Board did not take any evidence against Linda from school officials at that time. Moreover, no facts or underlying reasons for the recommendations were given to the Board during the session, presumably so the Board would remain unbiased. As pointed out by the Board, it was necessary to receive these recommendations in order for it to have a logical basis for its initial resolution and the notice it would serve on Linda. This initial decision by the Board was necessary to comply with SDCL 13–43–6.2.[1]

---

1. SDCL 13–43–6.2 provides:

The superintendent or the school board shall give written notice of the termination to the teacher; a written statement of the reasons for the termination; access to the employment records of the teacher; the opportunity to the teacher for a hearing before the school board to present reasons in person or in writing why the termination

should not occur; and the opportunity to be represented. The hearing provided by this section shall be requested within fifteen days after receipt of the notice. The school board shall conduct the hearing not sooner than fourteen days, nor later than forty-five days, after receipt of the teacher's request for hearing. The parties may waive the time limitations provided for in this section.

■ [¶ 25.] Due process requires notice and an opportunity to be heard. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569 (1972). Linda was not denied due process rights because she was not allowed to participate in a meeting where nothing more happened than the receipt of the school administrators' recommendations.

■ [¶ 26.] Next, Linda claims she was denied due process as guaranteed under the federal and state constitutions. She asserts that as a tenured teacher of the District she had a protected property interest in her job. Therefore, she contends she was entitled to a due process hearing before her property interest was terminated.

■ [¶ 27.] Property interests are granted by state law. *Winegar v. Des Moines Indep. Com. School Dist.,* 20 F.3d 895, 899 (8thCir.1994). The state may not convey a property interest, such as tenure, and then arbitrarily terminate employment in violation of that interest. *See e.g., Bricklayers Union Local 21 v. Edgar,* 922 F.Supp. 100, 107–8 (N.D.Ill.1996). Under state law, Linda did have a property interest in her continued employment with the District. However, as long as her employer followed the requirements of due process, that property interest could be terminated. This Court has held that a pre-termination hearing is required by due process in order to discharge a tenured teacher for cause. *Coull v. Spearfish Bd. of Educ.,* 340 N.W.2d 695 (S.D.1983); *Hensley v. Yankton Ind. Sch. Dist. No. 1,* 88 S.D. 670, 227 N.W.2d 441 (1975). SDCL 13–43–6.2 provides that, upon request of the teacher, a hearing before the board will be held.

[¶ 28.] Linda requested and received a hearing in front of the Board on April 8 and 9, 1998. At that hearing, the Board heard evidence submitted by Linda as well as evidence submitted by school personnel. At the conclusion of the hearing, the Board determined it would not renew Linda's contract for the 1998–99 school year. However, Linda continued to be employed under her existing contract until the end of the 1997–98 school year. Thus, at the time of the April hearing, Linda was still an employee of the District. It follows that the hearing was a pre-termination or pre-nonrenewal hearing and that Linda was not terminated and then given a post-termination hearing in violation of due process standards. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Rather, Linda was given notice of the Board's intent not to renew her contract for the *following* school year and was given an opportunity to be heard *before* the final decision was made. After the hearing, she continued her employment until her 1997–98 contract expired.

■ [¶ 29.] Finally, Linda argues she was terminated under the wrong statutory scheme. She contends that the scheme currently in place is unconstitutional as applied to her and that the statutes in effect when she was initially granted tenure over ten years ago should govern her case. *See* SDCL 13–43–9.1 through 13–43–10.2 (1991 rev).

■ [¶ 30.] A state is free to change or even to terminate a property interest it has granted. *See, Bricklayers,* 922 F.Supp. at 107–8. The Court in *Bricklayers* found, "[a] statute is not a commitment by the legislature never to repeal the statute." *Id.* at 106. The state legislature has the power to change statutes to meet the changing needs of the people of South Dakota. *See Bricklayers,* 922 F.Supp. at 106. The state correctly asserts that all certified teachers, including Linda, were on notice that the legislature was making extensive modifications to the continuing contract statutes during the 1995 legislative session. As the state points out, these teachers had notice and the opportunity to be heard regarding their concerns over the statutes being revised. The state also argues, correctly, that a meaningful time for Linda to voice concerns about changing the statutes would have been in 1995, not after they have been approved and become

state law. Moreover, the statutes enacted during the 1995 legislative session still grant tenure to teachers who remain in one district for a statutory period of time and still provide for due process before a tenured teacher can be terminated.

[¶ 31.] The statutes in effect now are not so fundamentally different as to strip Linda of her due process rights. The statutory scheme in effect now gives Linda the right to a hearing as did the old statutes. The current statutes give her the right to access her employment records as did the old statutes. The old statutes required written notice from the board to the teacher of the intention not to renew and of the right to appeal to circuit court. The current statutes contain these same requirements. There is no reason the old statutes should apply here. The old statutory scheme was repealed in 1995 and the current statutes enacted at that time. Linda was given notice of the Board's intention not to renew her contract in March 1998 when the current statutes had already been in effect for almost three years. All of the cases cited by Linda with regard to the repealed statutory scheme were decided while it was still in place. Additionally, even under the old scheme, the same type of procedure was followed and upheld by this Court. *See, Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595 (S.D. 1979); *Hensley, supra.*

[¶ 32.] There is a strong presumption that the laws enacted by the legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a constitutional provision. *Gould v. Pennington Cty. Bd. of Equal.*, 1997 SD 129, ¶ 6, 570 N.W.2d 846, 847 (citing *Cary v. City of Rapid City, South Dakota*, 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893). Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision. *Id.* Linda has not met this burden. SDCL 13–43–6.1

through 13–43–6.6 are not unconstitutional as applied to Linda.

[¶ 33.] Having addressed Linda's constitutional concerns, we must still determine whether the Board followed the mandates of state law, in order to make a final determination as to the legality of the Board's actions. Linda argues the Board was required to give reasons for non-renewal of her contract under SDCL 13–43–6.1 and that this was not done. However, the notice she received did cite two reasons for non-renewal. The two reasons cited, incompetence and failure to meet district standards, are specifically mentioned in SDCL 13–43–6.1 as possible reasons for non-renewal of a teacher's contract. Linda argues that the Board should have issued written reasons for non-renewal and that this duty could not be delegated to the superintendent. This contradicts the mandate of state law. SDCL 13–43–6.2 states, "[t]he *superintendent or* the school board shall give . . . a written statement of the reasons for the termination[.]" (emphasis added). Nothing in the statutes indicates the reasons must be issued with the Board's initial resolution. The superintendent complied with state law when he provided the written notice to Linda that contained the two reasons for non-renewal of her contract.

[¶ 34.] Linda also argues the Board's actions were illegal because it allowed the District to present evidence at the Board's hearing. She claims this was illegal because the statute does not specifically grant permission for the District to present evidence. SDCL 13–43–6.2 provides for a hearing before the Board at which a teacher can present reasons why non-renewal should not occur. Linda is correct in her assertion that the statute does not specifically provide for the presentation of evidence by the District. However, nothing in the statutory scheme precludes the District from presenting evidence. For the Board to make a proper decision it is logical that it hear evidence from all sides. Linda had an opportunity

to present her side of the story. Prior to the hearing, the Board had heard no evidence from the District as to why the administrators felt Linda's contract should not be renewed. Had the Board heard only Linda's evidence it likely would have had no choice but to renew Linda's contract. Without evidence from the District, a decision not to renew would have been arbitrary and capricious and based on no evidence at all.

▪ [¶ 35.] Courts must construe statutes according to their intent and intent must be determined from the statutes as a whole. *NSP v. South Dakota Dept. of Revenue*, 1998 SD 57, ¶ 10, 578 N.W.2d 579, 582 (citing *Whalen v. Whalen*, 490 N.W.2d 276, 280 (S.D.1992)). When looking at the whole statutory scheme of SDCL ch 13–43, it is evident the Board must hear evidence from all sides in order to fairly and accurately determine the fate of a teacher's contract. For a just decision to be reached, both sides must be able to present their evidence at the hearing.

### ISSUE THREE

[¶ 36.] **Was the decision of the Board arbitrary and capricious?**

▪ [¶ 37.] The second prong in our standard of review requires this Court to determine if the Board's decision was arbitrary and capricious. As previously stated, we can only review the legality of the Board's decision, not its propriety. *Hughes*, 594 N.W.2d at 351. The question is not whether this Court would have made the same decision, but whether, after a review of the entire record, it is left with a definite and firm conviction that a mistake was committed. *Hughes*, 594 N.W.2d at 351; *Strain*, 447 N.W.2d at 338.

[¶ 38.] The Board did not make its final decision about whether or not to renew Linda's contract during the executive session. The Board members took no evidence at that time in order to maintain an unbiased opinion in the matter. The Board held a hearing on April 8 and 9, 1998, where it heard evidence from both sides on the issue of whether or not to renew the contract. The Board was in the best position to judge the credibility of the witnesses and to weigh the facts. The Board followed all statutory and constitutional procedures before reaching their final decision not to renew. Their decision is not contrary to the evidence in the record. The Board proceeded according to state law. There is nothing to leave this Court with a firm conviction that a mistake has been made. The decision of the Board as affirmed by the trial court has not been shown to be arbitrary and capricious.

[¶ 39.] Affirmed.

[¶ 40.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 41.] VON WALD, Circuit Judge, for MILLER, Chief Justice, disqualified.