#23968-a-DG

**2007 SD 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHARLENE BLONDO,                                    Petitioner and Appellant,

  v.

BRISTOL SCHOOL DISTRICT #18-1;
BRISTOL BOARD OF EDUCATION;
GROTON AREA SCHOOL DISTRICT #06-6
AND GROTON AREA BOARD OF EDUCATION,    Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
DAY COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON S. FLEMMER
Judge

* * * *

ANNE CROWSON PLOOSTER
South Dakota Education Association
Pierre, South Dakota                    Attorney for petitioner
                                and appellant.

RODNEY FREEMAN, Jr.
Churchill, Manolis, Freeman,
 Kludt, Shelton & Burns
Huron, South Dakota                     Attorneys for respondents
                                and appellees.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED **01/17/07**

#23968

GILBERTSON, Chief Justice

[¶1.]          Charlene Blondo appealed the Bristol School District #18-1 and Bristol Board of Education's decision to nonrenew her teaching contract for the 2004-2005 school year.  The circuit court affirmed the decision.  Blondo appeals the circuit court's decision.  We affirm.

FACTS AND PROCEDURE

[¶2.]          Blondo began employment with the Bristol School District in the summer of 2000 as a kindergarten through twelfth grade music teacher.  She completed her fourth year of teaching in the spring of 2004.

[¶3.]          The Bristol School District #18-1 (Bristol School District) and the Groton School District #06-6 (Groton School District) submitted a reorganization plan to the South Dakota Department of Education (Department) in July of 2003 for a school district to be known as the Groton Area School District.  The Department approved the plan and it was submitted to the voters of the respective school districts per the provision of SDCL 13-6-41.[1]  Groton School District voters approved and passed the plan on September 23, 2003.  The voters of the Bristol School District failed to approve and pass the plan on October 21, 2003.  However, on January 20, 2004, the Bristol School District voters approved and passed the reorganization plan as proposed.  The effective date for the reorganization plan was

_____

1.    SDCL 13-6-41 provides:  "Upon receipt of the approval of the plan from the secretary of the Department of Education, the school board of each school district shall call a special election within each school district and all qualified voters of the district shall be entitled to vote on the proposal."

set by the Department as July 1, 2004.[2] An election for the board members of the newly consolidated school district, to be known as the Groton Area Board of Education (Groton Area Board), was scheduled for April 20, 2004.

[¶4.] At their respective February meetings and in anticipation of the consolidation efforts that needed to be put into effect, the Bristol Board of Education (Bristol Board) and the Groton Board of Education (Groton Board) both adopted similarly revised recall policies for teachers displaced by anticipated reductions in force. It was unknown at that time how many music teachers would be needed by the newly created Groton Area School District.

[¶5.] At its March 8, 2004 meeting, the Groton Board voted to accept the resignation of one of its three music teachers. At its March 22, 2004 meeting, the Groton Board voted to nonrenew the teaching contracts of its remaining two music teachers, Janet Harder and Deb Jensen, due to a reduction in force as the Groton School District would cease to exist and no longer require music teachers.

[¶6.] On March 22, 2004, a special joint session of the Bristol Board and the Groton Board was held. At that meeting, the Bristol Board voted to nonrenew Blondo's teaching contract for the 2004-2005 school year due to a reduction in force.

---

2. SDCL 13-6-48 provides:
   The secretary of the Department of Education shall notify all school boards of each district included in the plan and boards of county commissioners affected if such plan has been approved or rejected by the voters. If the plan was approved by the voters, the secretary of the Department of Education shall issue his order to give effect to such plan. The order shall contain a description of the boundary of each school district, *the date that the district shall become operative,* the number of school board members to be elected and the county of jurisdiction as provided in § 13-5-14. (emphasis added).

Blondo was properly notified of the nonrenew due to the reduction in force on March 24, 2004, at a meeting with the Bristol School District Superintendent. Blondo refused to sign acknowledgement of receipt of the notification, which was then documented by the Bristol School District Business Manager who witnessed the meeting.

[¶7.] On April 20, 2004, the election for the Groton Area Board of Education was held and on April 22, 2004, the first meeting of the Groton Area Board was held. It voted to issue 2004-2005 teacher contracts with a return date of May 7, 2004. After determining it needed only two music teachers for the newly consolidated school district, the Groton Area Board offered 2004-2005 contracts to Harder and Jensen under its recall policy, but not to Blondo. Harder and Jensen returned their signed contract by the May 7, 2004 deadline and no additional recalls were needed for the Groton Area School District's music program.

[¶8.] Blondo subsequently gave timely notice of her intent to appeal her nonrenewal. In her appeal, Blondo stipulated that Bristol School District did not act arbitrarily or capriciously in its decision to nonrenew her contract. Instead, Blondo argued the Bristol School District and Bristol Board did not have legal authority under the provisions of SDCL Chapter 13-46 and, therefore, was not the proper entity to nonrenew her contract for the 2004-2005 school year. Relying on a circuit court memorandum decision issued by the Sixth Judicial Circuit in 1984, in *Bonesteel Educ. Ass'n v. Bonesteel Bd of Educ.*, Blondo argued that the Groton Area Board was the only entity with statutory authority to nonrenew Bristol School District teachers for the 2004-2005 school year, as it was the only entity that would

require staffing for the next school year. Finally, Blondo asked the circuit court to order her reinstatement to the Groton Area School District as a music teacher for the 2004-2005 school year.

[¶9.] The circuit court affirmed the decision of the Bristol Board. It concluded that the Bristol Board possessed the legal authority to nonrenew Blondo's contract for the 2004-2005 school year under the provisions of SDCL 13-6-64 and its reduction in force policy. It also concluded that the Bristol Board did properly and effectively nonrenew Blondo's contract under the requirements of SDCL Chapter 13-43, and that Blondo was given proper notice of nonrenewal before the April 15 deadline pursuant to SDCL 13-43-6.4.

[¶10.] Blondo appeals to this Court, raising one issue:

> Whether the circuit court erred when it found that the Bristol
> School District and Board of Education were the proper entities
> to reduce-in-force Blondo.

## STANDARD OF REVIEW

[¶11.] This Court recently articulated the proper standard of review of a school board's decision in *Hicks v. Gayville-Volin School District*:

> SDCL 13-46-6 allows a party to appeal a school board
> decision. That statute provides for a de novo trial to the
> circuit court.
>
> The trial in the circuit court shall be de novo according to
> the rules relating to special proceedings of a civil nature
> so far as such rules are applicable and not in conflict with
> the provisions of this chapter and the court shall enter
> such final judgment or order as the circumstances and
> every right of the case may require and such judgment or
> order may be enforced by writ of execution, mandamus, or
> prohibition, or by attachment as for contempt.

*Id.* Despite the "de novo" language of this statute, this
Court has long held that the standard of review is not
that traditionally used in an ordinary trial de novo.
Instead, great deference is given to the good faith
determinations of school boards whether to renew a
teacher's contract. Wuest v. Winner School Dist. 59-2,
2000 SD 42, ¶12, 607 NW2d 912, 915; Jager v. Ramona
Bd. of Educ., 444 NW2d 21, 25 (SD 1989). Consequently,
we have repeatedly stated:

The circuit court's review is not a trial de novo in the
ordinary sense of the phrase. School boards are creatures
of the Legislature and the judiciary may not interfere
with their decisions unless the decision is made contrary
to law. Therefore, "as long as the school board is
legitimately and legally exercising its administrative
powers, the courts may not interfere with nor supplant
the school board's decision making process." Only the
legality of the decision, not the propriety of the decision,
may be reviewed by the courts. The legality of a school
board's decision is determined by a two-prong review.
First, the procedural regularity of the decision is
reviewed. This review includes whether the school board
was vested with the authority to act and whether all
procedural requirements required by law were followed.
Second, the school board's decision is reviewed to
determine whether the decision was arbitrary, capricious
or an abuse of discretion.

Gauer v. Kadoka School Dist. No. 35-1, 2002 SD 73, ¶5,
647 NW2d 727, 730.

2003 SD 92, ¶10, 668 NW2d 69, 73.

## ANALYSIS AND DECISION

[¶12.] In the instant case, the only issue for this Court's review is whether

the Bristol School District and the Bristol Board were the proper entities to provide

Blondo with the statutorily required notice of nonrenewal due to reduction in force.

If the Bristol School District and the Bristol Board were the proper entities, there is

no dispute in the record that the proper procedural requirement of notice in writing

due by April 15 was followed.

[¶13.] SDCL 13-43-6.4 provides: "Notwithstanding §§ 13-43-6.1 to 13-43-6.3, inclusive, if a teacher's contract is not renewed due to a reduction in staff, only written notice is required, which shall be provided by *the school board* to the teacher by April fifteenth."[3] (emphasis added). At issue is the meaning of "the school board" in the statutory language given the facts of this case.

[¶14.] SDCL 13-6-64 provides:

> *The school board members of a newly created district elected on or before the first Monday in May shall qualify and assume office as soon as can be conveniently done* but not before the first Monday in January of the year in which the district will become operational. They shall organize the board as provided in chapter 13-8 and may immediately contract for services and supplies to be furnished the newly created school district for the fiscal year beginning July first of the year following the election and organization of such board. However, if a new district does not become operational, the contracts are void. The board shall meet as often as it deems necessary before the new district becomes operational, and its expenses shall constitute a legal claim under §§ 13-8-37 and 13-8-38, to be paid by the new district when operational. *The school boards of existing districts reorganized into newly created districts shall continue to operate until the end of the current fiscal year.* (emphasis added).

[¶15.] The Groton Area Board of Education did not come into existence until the election results were certified by the Brown County Auditor on April 22, 2004. Until that date, only the Groton Board and the Bristol Board existed as legal entities with the power to contract. The Bristol Board, as the duly elected governing body of a dissolving district, was legally entitled to continue functioning until "the newly elected school officers assume their offices and all duties . . . have been performed." SDCL 13-6-67. Thus, on April 15, 2004, the deadline for

---

3. SDCL 13-43-6.1 to 13-43-6.3 are not at issue in the instant case, as these

(continued . . .)

nonrenewal notification, the only entity in existence with legal authority to nonrenew Blondo's contract was the Bristol Board as the Groton Area Board had yet to be elected.

[¶16.] Blondo's argument that only the Groton Area Board had the legal authority to nonrenew Bristol teachers is misplaced. There is nothing in the statutory scheme under SDCL Chapter 13-43 to support her contention. All relevant statutory provisions clearly indicate that only the Bristol Board had the legal authority to nonrenew Blondo by the April 15 deadline, as it was the only legal entity in existence at the time with the legal authority to contract with tenured teachers.

[¶17.] Affirmed.

[¶18.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

(. . . continued)
     code sections refer to the nonrenewal of tenured teachers for cause.