**Arlen NORDHAGEN, Appellant,**

v.

**HOT SPRINGS SCHOOL DISTRICT NO. 23–2, Appellee.**

**No. 17304.**

Supreme Court of South Dakota.

Considered on Briefs May 21, 1991.

Decided Aug. 28, 1991.

CIOUS, CHARACTERIZED BY AN ABUSE OF DISCRETION OR CLEARLY AN UNWARRANTED EXERCISE OF DISCRETION?

We affirm.

A.P. Fuller of Fuller & Co., Ltd., Lead, for appellant.

Rodney Freeman, Jr. of Churchill, Manolis, Freeman Kludt & Kaufman, Huron, for appellee.

LOVRIEN, Circuit Judge.

This is an appeal from a judgment of the circuit court for the Seventh Judicial Circuit, Fall River County, affirming the decision of the school board of Hot Springs School District No. 23–2, (Board) not to renew the contract of Arlen Nordhagen (Nordhagen) for the 1989–90 school year. Nordhagen brings the following issue to this court for resolution:

WAS THE BOARD'S DECISION TO NONRENEW NORDHAGEN'S CONTRACT CLEARLY ERRONEOUS IN LIGHT OF THE ENTIRE RECORD AND WAS IT ARBITRARY OR CAPRI-

## FACTS

Nordhagen was the secondary school principal at the Hot Springs High School. In March 1989 his contract was not renewed for the 1989–90 school year. Originally, Board voted not to rehire Nordhagen for seven reasons.[1] The circuit court found that at least three of the seven reasons were invalid. Since the court could not decide how much weight Board had given each reason, it remanded the matter to Board for a rehearing under reasons 2, 4, 6, and 7.

After this review, Board again determined to nonrenew Nordhagen's contract based on four reasons and Board's action was again appealed to circuit court.

The circuit court upheld Board's decision on its four reasons:

1. Reason 2:

"You are lacking in professional growth, leadership and conduct." [2]

---

1. The seven reasons were:

   1. Nordhagen failed to provide the instructional leadership expected for his position.

   2. Nordhagen lacked professional growth, leadership and conduct.

   3. Nordhagen's actions and conduct in regard to the evaluation committee showed a resistance to implement Board's policy and unprofessional conduct toward other professional staff.

   4. Nordhagen failed to perform evaluations on the teachers he supervised.

   5. Nordhagen demonstrated unprofessional conduct regarding other colleagues and administration. He was observed in the office files reviewing the superintendent's folder and asserted that the superintendent was short hours of courses for certification.

   6. Nordhagen's skills as an education leader were lacking. Nordhagen was negative to parents and grandparents in the area of public relations and understanding, took a rigid stand, and challenged the validity, jurisdiction, and legality of the courts.

   7. Nordhagen demonstrated an insensitivity to students' needs and feelings, and negatively approached developing the self-image of specific students.

2. Standard school district practice was that the superintendent would evaluate an administrator and sit down with the administrator and go through the pros and cons of the evaluation document. The superintendent testified that it was important to secure feedback from the person being evaluated so that there was a clear understanding of the deficiencies and the manner and method of improvement. It was also important so that the administrator could express his or her side of any disputed issue and provide the superintendent with insight as to any explanation of perceived deficiencies. Instead of approaching this accepted evaluation process in a professional manner, Nordhagen quickly scanned the document, became very upset and irritated and stormed out of the office, advising the superintendent that he would be submitting a reaction in writing to the evaluation. The superintendent not only did not receive a reaction in writing from Nordhagen, but Nordhagen at no time attempted to discuss it with the superintendent in a professional manner even though Nordhagen himself agreed that this plan of assistance was a valuable tool. Nordhagen never discussed or expressed disagreement with the evaluation and never told the superintendent that any of the evaluation re-

2. Reason 4:

"You were to perform evaluations of the teachers under your supervision according to Board policy ... you still have failed to comply with performing your duties in conducting evaluations ... in spite of the direction given to you by the Superintendent and the Board."

3. Reason 7:

"You have demonstrated an insensitivity to students' needs and feelings, and have negatively approached developing self-imagery of specific students." [3]

On remand, Board took additional evidence on Reason 6. Under the circuit court's decision, a portion of Reason 6 was eliminated as a reason for nonrenewal. The circuit court found that the failure of Nordhagen to honor tribal court orders was pursuant to the instructions of the previous superintendent and "to use this as a basis for nonrenewal was arbitrary." On remand, Board heard and believed evidence that Nordhagen "lied" to the new superintendent about a conversation with an assistant attorney general. On the second appeal, the circuit court accepted Board's conclusion that Nordhagen told the superintendent a "lie." This appeal followed.

## ANALYSIS

"This court has long recognized that great deference is given to the good faith determinations of school boards on decisions whether or not to renew a teacher's contract." *Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21, 25 (S.D.1989); SDCL 13-8-39. Therefore, "[a]s long as the school board is legitimately and legally exercising its administrative power, the courts may not interfere with nor supplant the school board's decision-making process." *Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595, 598 (S.D.1979).

Thus, our scope of review in this matter is limited to determining the legality of Board's decision. We have adopted a two-prong approach when reviewing a nonrenewal decision by a board of education: first, whether the board complied with all of the procedural requirements of the continuing contract law (SDCL 13-43-9.1 et seq.); and second, whether the school board's decision was arbitrary, capricious, or an abuse of discretion. *Moran*, supra.

In this case, Nordhagen argues that the procedural requirements of the continuing contract law were not followed because the Hot Springs School District had adopted a policy concerning what must occur before there could be a recommendation for nonrenewal:

Not recommended for continued employment. A recommendation against continued employment may not be given without two formal evaluations and a written plan of assistance. The evaluation must be completed prior to the 45th day preceding the 3rd Monday in March.

Nordhagen asserts that before his contract may be terminated, there must be two formal evaluations and a separate plan of assistance developed. There were two evaluations, but there is a dispute as to the existence of a plan of assistance. From the record, Board believed that a plan of assistance was contained within the two formal evaluations. Nordhagen contends that the plan of assistance must exist separate, and in addition to, the two evaluations.

We have held that a school board's policy has the force of law. *Dale v. Board of Ed., Etc.*, 316 N.W.2d 108 (1982); *Schnabel v. Alcester School Dist. No. 61-1*, 295 N.W.2d 340 (S.D.1980); *Schaub v. Chamberlain Bd.*, 339 N.W.2d 307 (S.D.1983). Thus, a school board must comply with its own rules.

marks were not realistic or that the goals set forth were not proper.

3. Further evidence on Reason 7 included an incident with a foreign exchange student from Mexico. The exchange student had signed up for a curriculum which he failed to complete.

Nordhagen subsequently took the position that the student would not graduate, and told the student he would not graduate in front of other students. Board took the position that it, and not Nordhagen, had the responsibility of deciding whether the curriculum had been followed.

From the record it is clear that while Nordhagen was recommended for continued employment in his first evaluation of the 1988–89 school year, the recommendation was conditional:

*Employment With Conditions*

A recommendation for continued employment with conditions must be accompanied by statements of the conditions and positive corrective actions to be taken by the evaluatee, (Nordhagen), and must include a commitment by the evaluator, (Superintendent), that assistance will be available. The evaluatee and evaluator must have a conference within 30 days after the recommendation to develop a *written plan* to implement the actions stated in the recommendation.

These conditions were clearly spelled out in the first evaluation.

Clearly, Board's policy contemplated that Nordhagen and the superintendent jointly develop a formal plan of assistance within 30 days of the first evaluation. It is clear from the record that the superintendent stood ready at all times to meet with Nordhagen to develop a formal written plan of assistance.

It is also clear that Nordhagen refused to cooperate in developing this formal plan of assistance. As the circuit court noted in its first memorandum decision:

Nordhagen had a full opportunity to respond, question, object, ask for clarification, or show where he thought Moran was wrong in his evaluation, but he did nothing. Under these circumstances it is unlikely that a more specific plan of assistance would have been effective.

■ The purpose of South Dakota's continuing contract law was to provide teachers and administrators with employment security and to prevent dismissals without cause. *Collins v. Wakonda Independent School Dist. No. 1,* 252 N.W.2d 646 (S.D.1977). Nordhagen will not be heard to complain that Board failed to follow its policy when he himself failed to cooperate with that policy as he was required to do. Nordhagen's argument in essence tries to exalt form over substance.

■ From the record before this Court, we cannot say that either Board or the circuit court was in error when each held that the informal plan of assistance contained in the two evaluations met the requirements of SDCL 13–43–9.1 and that Nordhagen frustrated Board's written policy by his failure to cooperate.

The second aspect of our review is whether or not the school board's decision was arbitrary, capricious or an abuse of discretion.

■ In *Mortweet v. Ethan Bd. of Ed. Davison Cty.,* 90 S.D. 368, 241 N.W.2d 580 (1976) and *Collins v. Wakonda Ind. School Dist. No. 1,* 252 N.W.2d 646, 647 (S.D.1977) we adopted a limitation upon a school board's right not to renew a teaching contract. "[W]e required that the exercise of a board's discretion not to renew such employment not be exercised unreasonably, or arbitrarily, or be manifestly abused, and that the board's decision be supported by substantial evidence." *Jager v. Ramona Bd. of Educ., supra,* 444 N.W.2d at 25. This requirement of substantive due process is satisfied if a board bases its determination upon competent, credible evidence. *Schneider v. McLaughlin Independent Sch. Dist. No. 21,* 90 S.D. 356, 241 N.W.2d 574 (1976); *Jones v. Sully Buttes Schools,* 340 N.W.2d 697 (S.D.1983); *Moran, supra.*

■ The burden is on the person challenging a board's decision to overcome the presumption that the board was acting in good faith. *Lantz v. Chamberlain Independent Sch. Dist. #1,* 254 N.W.2d 155 (S.D.1977).

■ Under the facts, Board at its first hearing in this matter listened to three and one-half hours of testimony, cross-examination, and conflicting views. They struggled with their decision for an hour. Board weighed that evidence and determined that the superintendent's testimony was competent and credible.

At the second hearing, Board again listened to hours of testimony, reviewed numerous exhibits, again struggled with the issue for over an hour, and still concluded

that the reasons given by the superintendent were valid and supported the non-renewal. The circuit court concurred.

Nordhagen has failed in his burden of proof. We find that there was competent and credible evidence to support the Board's decision and that of the circuit court. Accordingly, the judgment is affirmed.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.

LOVRIEN, Circuit Judge, for AMUNDSON, J., disqualified.