Nancy IVERSEN, Plaintiff
and Appellant,

v.

**WALL BOARD OF EDUCATION
and Wall School District 51–5,
Defendants and Appellees.**

No. 18664.

Supreme Court of South Dakota.

Considered on Briefs Oct. 18, 1994.

Decided Dec. 7, 1994.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for appellant.

J. Crisman Palmer of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for appellees.

MILLER, Chief Justice.

Appellant Nancy Iversen (Iversen) appeals the decision of the trial court granting summary judgment to Appellees Wall Board of

Education (Board) and Wall School District No. 51–5 (School District). (Appellees will be collectively referred to as Wall). Iversen contends that the trial court erred in concluding that Wall properly followed the notice statutes, school board policies and the negotiated agreement in attempting to reduce and/or eliminate Iversen's teaching contract for the 1993–1994 school year. Iversen claims that Wall is therefore precluded from proceeding with nonrenewal of her contract either in whole or in part. We affirm.

### · FACTS

Iversen was a high school English teacher under a full-time contract with Board for the 1992–1993 school year. On February 18, 1993, during a special meeting of Board, a motion was made to notify Iversen that her teaching position would be reduced to one-half time for the 1993–1994 school year. This motion failed to receive the required minimum of four votes. A motion was then made to notify Iversen that her contract would be entirely terminated for the 1993–1994 school year. This motion also failed to command the necessary votes. Following a brief recess, Board reconsidered the original motion to reduce Iversen's contract to half-time, which motion carried.

On February 22, 1993, Ken Poppe, Superintendent of School District, sent a letter to Iversen stating that her position would be reduced to half-time because of lack of student numbers and needs. Also on February 22, 1993, the president of Board sent an Official Notice of Intent, pursuant to SDCL 13–43–9.1, to reduce Iversen's contract to one-half time for the coming year.

On March 1, 1993, Superintendent Poppe sent another letter to Iversen advising her of his intent to recommend that Board not renew her contract at all. He stated the reason for the staff reduction was "to improve efficiency by reducing property tax requests while maintaining adequate programming." Four days later, on March 5, 1993, Iversen sent a letter to the president of Board requesting a hearing on Board's notification of February 22 to reduce her contract to one-half time. In a letter dated March 11, 1993, the president of Board advised Iversen that ·

Board had met the prior evening in a special meeting and had decided to discontinue action on the intent to reduce the contract to one-half time. The letter also stated that Board had decided to "continue with" action on the intent to reduce the contract in full as communicated to Iversen by Superintendent Poppe. The reason given for the intended nonrenewal was staff reduction. In this letter, Board also granted Iversen's request for an informal, private conference with Board. The letter set this meeting for March 17, 1993.

At the informal conference on March 17, 1993, Iversen insisted that the purpose of the hearing was to consider Board's intent to reduce her contract to one-half time. Board contended that the meeting was intended to address the complete nonrenewal, which was initially communicated to Iversen by the superintendent's letter of March 1, 1993.

On March 22, 1993, Iversen received a letter from the president of Board, which stated in relevant part: "You are hereby notified pursuant to SDCL 13–43–10 that the school board of Wall School District 51–5 has determined not to renew your contract for the coming school year. You are entitled to the statutory provision of SDCL 13–43–10.1 governing continuing contract."

Iversen filed suit in circuit court, seeking a declaratory judgment invalidating any of the notices issued by the superintendent and Board regarding complete nonrenewal of her contract. Specifically, she alleged that the continuing contract statutes (SDCL 13–43–9.1, 10 and 10.1), the School District policy, and the negotiated agreement between the Wall Education Association and Board did not permit the superintendent to give notice of complete nonrenewal when Board had previously issued a notice of half-time renewal. Similarly, Iversen alleged that, under these provisions, Board could not withdraw its earlier intention to seek a half-time reduction and instead initiate a full termination of her contract.

The parties stipulated to the facts before the trial court. Wall moved for summary judgment on the grounds that Board was entitled to overrule its previous decision and

pursue a new course of action and that Wall had complied with all due process requirements in completely terminating Iversen's contract. The trial court granted that motion. Iversen appeals.

## STANDARD OF REVIEW

"We have adopted a two-prong approach when reviewing a nonrenewal decision by a board of education: first, whether the board complied with all of the procedural requirements of the continuing contract law (SDCL 13–43–9.1 et seq.); and second, whether the school board's decision was arbitrary, capricious, or an abuse of discretion." *Nordhagen v. Hot Springs Sch. Dist.*, 474 N.W.2d 510, 512 (S.D.1991) (citing *Moran v. Rapid City Area Sch. Dist.*, 281 N.W.2d 595 (S.D.1979)).

It is important to note that, at this time, Iversen does not challenge Wall's decision to reduce or terminate her contract. Rather, she launches only a procedural challenge. She alleges that Wall failed to follow procedural requirements set forth in SDCL 13–43–9.1 and SDCL 13–43–10, Board policies, and a negotiated labor agreement, asserting that Wall's failure to comply with these requirements invalidates the termination of her contract.

■ On appeal, we must decide whether the trial court erred in determining that the actions of Board and School District were indeed in compliance with the procedure mandated by law. In reviewing this procedural question, the proper scope of review for this Court is the same as that of the trial court and "we are not bound by a presumption that the trial court's decision is correct." *Moran*, 281 N.W.2d at 600.

## ISSUE I

WHETHER SDCL 13–43–9.1, BOARD POLICIES, AND A NEGOTIATED LABOR AGREEMENT REQUIRE A CHANGE IN CIRCUMSTANCES BEFORE A SUPERINTENDENT MAY GIVE NOTICE TO RECOMMEND ACTIONS TO A SCHOOL BOARD WHICH SUPERSEDE THE SCHOOL BOARD'S

EARLIER NOTICE CONCERNING NONRENEWAL OF A TEACHING CONTRACT.

■ The parties stipulated that Iversen is a continuing contract teacher in the school district. As such, she is entitled to the procedural and substantive due process rights set forth in SDCL 13–43–9.1, –10, and –10.1. *Jager v. Ramona Bd. of Education*, 444 N.W.2d 21, 27 (S.D.1989); *Ward v. Viborg Sch. Dist. No. 60–5*, 319 N.W.2d 502, 504 (S.D.1982). We have recognized the general rule that "all of the procedural requirements of the teacher employment statutes must be followed by school boards." *Jones v. Sully Buttes Schools*, 340 N.W.2d 697, 699 (S.D. 1983) (citing *Moran*, 281 N.W.2d 595).

Iversen argues that the superintendent's decision to recommend complete nonrenewal of her contract, when Board had previously recommended reduction to half-time, was outside of the procedural requirements of SDCL 13–43–9.1. At the time in question, SDCL 13–43–9.1 provided in pertinent part:

> Before the third Monday in March, the school board shall notify in writing a teacher who is in or beyond the third full consecutive term of employment in a school district of its intention not to renew the teacher's contract, or the superintendent or school administrator shall notify the teacher of any intention on his part to recommend to the board that it not renew the teacher's contract. . . .

> This provision does not restrict the board in taking action, or the superintendent or other school administrator in making recommendations to the board, based on relevant circumstances which occur within twenty-one days of the notice required in this section, but, in such event, notice thereof shall be given to the teacher as soon as practicable.[1]

Iversen also claims that the superintendent's recommendation violates Board policy and a labor agreement between the Wall Education

---

1. In 1994, the statute was amended to include gender neutral language and to extend the dead- line for notification of intent not to renew to April fifteenth. 1994 S.D.Sess.L. ch. 133, § 1.

Association and School District, both of which mirror this statute.[2]

Specifically, Iversen contends that Board's original notice of February 22, 1993, anticipating a reduction to half-time, constituted the "notice of intent" contemplated by the statute. Iversen acknowledges that the statute allows the superintendent some authority to make recommendations to Board after the issuance of the notice of intent, but she emphasizes the phrase "based on relevant circumstances which occur within twenty-one days of the notice required in this section." According to Iversen, this phrase requires that *new* facts arise during the twenty-one-day period which would justify recommending a change to Board.

■ We reject the narrow reading urged by Iversen. She essentially contends that a *change* of circumstances is required before the superintendent may give notice of his intent to make contrary recommendations to Board. If the legislature had intended a showing of changed circumstances before allowing input from the superintendent, it could have referred to "changes" rather than "relevant circumstances." *See* SDCL 22–29–12 (making it unlawful for any person to knowingly fail to report "any change in circumstances" which would affect eligibility for certain entitlement programs); SDCL 25–7A–22 (allowing modification of child support based on a "change of circumstances"); SDCL 61–6–24 (making it unlawful to fail to report any "change in circumstances" which would affect eligibility for unemployment benefits). Additionally, the term "relevant circumstances" refers to a far broader range of information than that contemplated by Iversen. "Relevant" is defined as "bearing upon or properly applying to the matter at hand: affording evidence tending to prove or disprove the matters at issue or under discussion: PERTINENT." Webster's Third New International Dictionary, Unabridged

1917 (1971). Circumstances may bear upon or properly apply to the matter at hand without having to represent a change in existing facts.

Similarly, the statute's reference to relevant circumstances that "occur" within twenty-one days of the notice does not necessarily denote a "change" in existing facts. Webster's Third New International Dictionary, Unabridged offers several definitions of the word "occur." The definition most helpful to Iversen defines "occur" as "to present itself: come to pass: take place: HAPPEN." *Id.* at 1561. Iversen would have us rule that additional events must "take place" or "happen" within the twenty-one days after the notice of intent in order for a superintendent to make alternative recommendations to a school board. However, the same dictionary also defines "occur" as "to be found or met with: APPEAR." *Id.* "Occur" may also mean "to come to mind: suggest itself." *Id.* These definitions indicate that relevant circumstances existing before the twenty-one-day period may "be found" or "suggest themselves" within the twenty-one-day period.

We favor this broader interpretation for several reasons. First, the statutory provision begins by emphasizing an intent not to restrain board action or recommendations by school administration. SDCL 13–43–9.1 ("This provision does not restrict the board in taking action, or the superintendent or other school administrator in making recommendations to the board[.]"). Additionally, by accepting Iversen's definition, Board and the administration would be restrained from taking alternative action or making alternative recommendations that may actually benefit the teacher whose existing contract is at stake. Under Iversen's interpretation, a superintendent would be precluded from recommending more lenient action unless the superintendent could point to supporting

---

**2.** The Board policy entitled "Professional Staff Probation and Tenure" states in relevant part: "Before the third Monday in March, a professional staff employee who may not receive a continuing contract will receive a written notice of intent from either the Board, which may intend not to renew, or from the superintendent, who may recommend nonrenewal to the Board. In accordance with law, failure of the Board or

superintendent to give proper notice at proper time will constitute an offer of employment." Article VIII of the negotiated agreement between the Wall Education Association and the Wall School District provides in pertinent part: "In making staff reductions involving professional staff members on continuing contract status, the Board will follow the provisions of SDCL 13–43–9.1, 13–43–10, and 13–43–10.1."

facts which took place in the twenty-one-day period after Board's notice of intent. We will not endorse a statutory interpretation which would lead to such anomalous results. Consequently, we conclude that a superintendent need not demonstrate a *change* in circumstances in order to make an alternative *recommendation* to a school board under SDCL 13–43–9.1. Because Wall's superintendent did not violate the provisions of this statute, his actions are also in accordance with Board policy and the negotiated labor agreement which parallel this statute.

## ISSUE II

WHETHER THE BOARD COMPLIED WITH SDCL 13–43–9.1 AND SDCL 13–43–10 IN TAKING ACTION TO REDUCE IVERSEN'S CONTRACT IN FULL, WHEN IT HAD INITIALLY ISSUED NOTICE OF ITS INTENT· TO REDUCE HER CONTRACT TO HALF-TIME.

The facts of this case demonstrate that Board and School District clearly complied with the notice requirements of SDCL 13–43–9.1 and –10. SDCL 13–43–9.1 required in relevant part:

> · Before the· third Monday in March, the school board shall notify in writing a teacher who is in or beyond the third full consecutive term of employment in a school district of its intention not to renew the teacher's contract, *or the superintendent or school administrator shall notify the teacher of any intention on his part to recommend to the board that it not renew the teacher's contract.* (Emphasis added.)

Here, the superintendent's notice of his intention to recommend complete nonrenewal of Iversen's contract was delivered to her on March 1, 1993, well before the third Monday in March.

SDCL 13–43–10 mandates in pertinent part: "Not earlier than fourteen days nor later than twenty-one days after the notice of intent as provided in § 13–43–9.1, such teacher shall be notified in writing by the board of the board's determination not to renew the teacher's contract for the ensuing school year." On March 22, 1993, twenty-one days after the March 1, 1993, notice from the superintendent, Iversen received a letter from Board which stated: "You are hereby notified pursuant to SDCL 13–43–10 that the school board of Wall School District 51–5 has determined not to renew your contract for the coming school year." This notice was properly issued within the fourteen to twenty-one-day period set out in the statute.

■ Iversen mistakenly argues that the March 11, 1993, letter from Board (reporting its decision to pursue complete rather than half-time reduction of her contract) consti·tutes Board's determination and therefore falls before the fourteen to twenty-one-day period. This argument is untenable for several reasons. First, the letter is cast as a letter of intent rather than a notice of determination, expressing Board's passage of a motion to "continue with the action of intent to reduce the contract of Nancy Iversen in full." Second, at the time this letter was written, Board granted Iversen an informal conference to discuss its intended actions. This conference was scheduled for March 17, 1993, six days after the date of the letter. If · the March 11 letter was indeed a notice of determination under SDCL 13–43–10, the informal conference would have been moot, and the next procedural step would have been a formal hearing under the provisions of SDCL 13–43–10.1.

■ Iversen draws this Court's attention to a Board policy which allows a teacher to receive, upon written request, an informal private conference "before the person or group that issued the notice of intent." We have held that a school board's policy has the force of law. *Nordhagen,* 474 N.W.2d at 512 (citing *Schaub v. Chamberlain Bd. of Education,* 339 N.W.2d 307 (S.D.1983); *Schnabel v. Alcester Sch. Dist. No. 61–1,* 295 N.W.2d 340 (S.D.1980); *Dale v. Board of Education, Lemmon Ind. Sch. Dist. No. 52–2,* 316 N.W.2d 108 (S.D.1982)). Therefore, a school board must comply with its own rules. *Nordhagen,* 474 N.W.2d at 512.

■ If the superintendent's notice regarding complete termination is deemed operative, Iversen argues that the informal conference of March 17, 1993, should have been

held before the superintendent rather than Board. This argument is unpersuasive. Iversen herself specifically requested a conference before Board to discuss the half-time reduction which Board had initiated. *She never requested an informal conference regarding the full-time termination of her contract.* Indeed, when Board met on March 17, 1993, to discuss the full-time termination, Iversen insisted that the purpose of the conference was only to discuss the half-time reduction initially endorsed by Board. Since Iversen never requested an informal conference regarding the full-time termination, School District's failure to schedule a conference between Iversen and the superintendent was not a violation of Board policy.

Affirmed.

WUEST, SABERS, AMUNDSON and KONENKAMP, JJ., concur.