2002 SD 73

**Joanne GAUER, Petitioner and Appellant,**

v.

**KADOKA SCHOOL DISTRICT NO. 35–1 and Kadoka Board of Education, Respondent and Appellee.**

**No. 22009.**

Supreme Court of South Dakota.

Argued March 25, 2002.

Decided June 19, 2002.

---

Ms. Anne Plooster, South Dakota Education Association, Pierre, for petitioner and appellant.

Mr. Thomas H. Harmon of Tieszen Law Office, Pierre, for respondent and appellee.

AMUNDSON, Justice.

[¶ 1.] Joanne Gauer's (Gauer) employment contract was not renewed by the Board of the Kadoka School District (Board). Gauer appealed the Board's decision, and the circuit court affirmed the Board's decision for nonrenewal on appeal. We, too, affirm.

## FACTS

[¶ 2.] The Board hired Gauer as a teacher and counselor for the 1986-87 school year. Gauer remained in that position for fourteen years, and she received positive evaluations for her work at the school. In the spring of 2000, Ken Poppe (Poppe), school superintendent, received word from the South Dakota Department of Education that renewing Gauer's South Dakota Teaching Certificate was problematic due to a prior suspension of Gauer's teaching license in North Dakota. As a result, Poppe asked District Attorney Rodney Freeman to look into the matter. After some investigation, Freeman reported that Gauer's North Dakota license had been suspended in 1985 for sexual misconduct. Gauer had, on several occasions, engaged in sexual activity with a seventeen-year-old female who had just graduated from Ellendale High School where

Gauer had been the guidance counselor. Gauer, who befriended her student through her position as counselor, was charged criminally for this conduct.[1] She pleaded guilty to Corruption of a Minor and resigned from her position as guidance counselor and teacher in Ellendale. Gauer received a deferred imposition of sentence and her North Dakota teaching certificate was suspended.

[¶ 3.] In April of 2000, Poppe informed the Board of these facts at a closed, special meeting and the Board voted not to renew Gauer's contract. Gauer was notified of its decision, and requested a hearing, which was held in June of 2000. Between April and June, Gauer was placed on leave with pay. During the hearing Gauer admitted that she never reported the incident in North Dakota to the Board and testified that she did not think she was obligated to do so.[2]

[¶ 4.] At Gauer's hearing, evidence of the sexual misconduct in North Dakota, as well as other insubordinate behavior was presented. The Board decided not to renew Gauer's contract based on "incidences of insubordination and display of lack of professional judgment as well as gross immorality involving the suspension of [her] teaching certificate in the State of North Dakota and [her] failure to disclose that fact to the Board of Education."[3] Gauer appealed the Board's decision to circuit

1. At the hearing before the Board, Gauer admitted to the relationship with the former student. Gauer testified that the former student had been released from a psychiatric hospital prior to attending Ellendale High School, and Gauer was supposed to assist her in her transition back to school.

2. Although the current Board and superintendent did not know about this sexual misconduct, it appears that Gauer may have informed the previous superintendent, Joe Blando, about the North Dakota incident. This is evidenced by a letter from her counsel-

or to Blando explaining her progress and expected success in completing her treatment after this incident with the student in North Dakota. The Board, however, concluded that no "credible and competent evidence" indicated that the previous Board members were informed of the incident.

3. These findings were based on the occurrence in North Dakota, in conjunction with acts of criticizing other staff members, arguments with Poppe, failure to cooperate with other staff members and emotional outbursts.

court, which affirmed. Gauer appeals, raising the following issues:

1) **Whether the appropriate procedural steps were taken to satisfy Gauer's right to due process.**

2) **Whether the Board's decision to nonrenew Gauer's contract was arbitrary, capricious or an abuse of discretion.**

## STANDARD OF REVIEW

[¶ 5.] As stated in *Collins v. Faith School District*, 1998 SD 17, ¶ 13, 574 N.W.2d 889, 892, the standard of review for school board decisions, is as follows.

[T]he circuit court's review is not a trial de novo in the ordinary sense of the phrase. School boards are creatures of the [L]egislature and the judiciary may not interfere with their decisions unless the decision is made contrary to law. Therefore, "[a]s long as the school board is legitimately and legally exercising its administrative powers, the courts may not interfere with nor supplant the school board's decision making process." Only the legality of the decision, not the propriety of the decision, may be reviewed by the courts. The legality of a school board's decision is determined by a two-prong review. First, the procedural regularity of the decision is reviewed. This review includes whether the school board was vested with the authority to act and whether all procedural requirements required by law were followed. Second, the school board's decision is reviewed to determine whether the decision was arbitrary, capricious or an abuse of discretion. The circuit court may reverse or modify the school board's decision only "if substantial rights of appellant have been prejudiced because the board's findings, inferences, conclusions, or decisions are clearly erroneous in light of the entire evidence in the record, or are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

(internal citations omitted). "[W]e review facts under the clearly erroneous standard" and "questions of law are reviewed de novo." *Wuest v. Winner Sch. Dist.*, 2000 SD 42, ¶ 12, 607 N.W.2d 912, 916.

## DECISION

[¶ 6.] **1) Whether the appropriate procedural steps were taken to satisfy Gauer's right to due process.**

[¶ 7.] Gauer argues that inappropriate information was distributed at the special meeting of the School Board in April, which was held to apprise the Board of Poppe's discoveries, thereby violating her due process rights. She alleges that the Board was inappropriately informed of the underlying reasons for Poppe's recommendation of nonrenewal of her contract, which, in turn, "tainted" the nonrenewal process. She argues the Board was given "excess information," which denied her the right to a fair and impartial hearing. Gauer believes that the Board should have been given only enough information to make a decision, and that the details of her past misconduct, such as the sex of the victim, served only to "flame the prejudice."

[¶ 8.] We have previously acknowledged that "executive or closed meetings of public boards may be held to discuss the qualifications, competence, performance, character or fitness of any public officer or employee or prospective public officer or employee." *Id.* at ¶ 23 (citing SDCL 1–25–2). Then, once the decision has been made to terminate a teacher, proper notice must be given to that teacher. *See* SDCL 13–43–6.2; *Wuest*, 2000 SD 42 at ¶¶ 24–25, 607 N.W.2d at 917. SDCL

13–43–6.2 requires that teachers be given "written notice of termination" and "a written statement of the reasons for the termination[.]" Furthermore, the teacher must be given the right to a hearing before the school board. "Due process requires notice and an opportunity to be heard." *Wuest,* 2000 SD 42 at ¶ 25, 607 N.W.2d at 917 (citing *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569 (1972)). So long as the Board followed the appropriate prerequisites for termination as provided by state law, Gauer did not have a property interest in continued employment. *Id.*

▮ [¶ 9.] With regard to the alleged excessive information, in *Wuest,* we acknowledged that the Board did not give specific underlying reasons for recommending a non-renewal during an executive session, "presumably" to avoid bias by board members. *Id.* at ¶ 24. We did not, however, place an outright ban on the use of underlying concerns for potential dismissal. In that case, we said "it was necessary to receive ... recommendations [not to renew a teacher's contract] in order for [the Board] ... to have a logical basis for its initial resolution and the notice it would serve on [the affected teacher]." *Id.* Clearly, a "fair tribunal" free from bias is a basic tenet of due process. *Strain v. Rapid City Sch. Bd. for Rapid City Area Sch. Dist.,* 447 N.W.2d 332, 336 (S.D. 1989).[4] We have said that to prove actual

bias the record must establish "either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure." *Riter v. Woonsocket Sch. Dist.,* 504 N.W.2d 572, 574 (S.D.1993).

[¶ 10.] Here, Gauer claims disclosing the gender of the victim at the executive session created bias, and that this bias is proven by board members' comments after the executive meeting. Gauer further argues that after the executive session, Jack Hanson, a Board member, made the comment that nonrenewal of Gauer's contract was "not a difficult decision." We, however, acknowledge that the underlying reason for reviewing Gauer's contract was necessarily reviewed by the Board at the executive session, and the underlying facts would have been analyzed whether the North Dakota incident involved a male or female victim. Although the impetus for concern is somewhat controversial, the Board had to review the facts in order to make the initial decision on whether to renew Gauer's contract. The requisite hearing and procedures essential for effective due process later followed the executive session. Additionally, the record demonstrates that Hanson, who allegedly made biased comments, was not even present at Gauer's hearing. Thus, nothing in the record establishes that comments made following the April meeting conclusively es-

---

**4.** In *Strain* we dealt with whether bias existed within a school board, and stated the following:

Not only is a biased decision maker constitutionally unacceptable, but "our system of law has always endeavored to prevent even the probability of unfairness." The standard to be applied is whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment

inhered in the Board's procedure. The United States Supreme Court has observed, however, that a school board is not disqualified as the decision maker solely because of the prior involvement in a dismissal case [citing *Hortonville Dist. v. Hortonville Ed. Assoc.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976) ]. Pre-decision involvement "is not enough to overcome the presumption of honesty and integrity in policy makers with decision making power." *Strain,* 447 N.W.2d at 336 (other internal citations omitted).

tablish bias, or an "unacceptable risk of actual bias or prejudgment" by the Board. *Id.*

[¶ 11.] Moreover, we have acknowledged that the Board should be "afforded a strong presumption of good faith." *Id.* "[G]reat deference is given to the good faith determinations of school boards on decisions of whether to renew a teacher's contract." *Wuest*, 2000 SD 42 at ¶ 12, 607 N.W.2d at 915–16. "The burden is on the person challenging a board's decision to overcome the presumption that the board was acting in good faith." *Nordhagen v. Hot Springs Sch. Dist.*, 474 N.W.2d 510, 513 (S.D.1991). Gauer has not carried her burden on this necessary showing of bias by the Board, which would sustain a violation of her due process rights.[5]

[¶ 12.] Further, we note that the Board did not attempt to deceive or withhold information from Gauer, which, if done, could have violated her due process rights. *See Strain*, 447 N.W.2d at 335–36 (holding board did not fail to disclose exculpatory information in violation of teacher's due process rights). The Board disclosed the reasons for non-renewal of Gauer's contract, and after a full and fair hearing, chose not to continue its contract with Gauer. The record evinces an adequate disclosure of information and the appropri-

ate procedural steps to ensure Gauer's due process rights were safeguarded. Therefore, we affirm on issue one.

[¶ 13.] **2) Whether the Board's decision to nonrenew Gauer's teaching contract was arbitrary, capricious or an abuse of discretion.**

[¶ 14.] Next, Gauer argues that the decision of the Board was arbitrary and capricious.[6] We have previously stated the following with regard to defining arbitrary and capricious:

"In determining whether the school board's decision was arbitrary, capricious or an abuse of discretion, the circuit court must ascertain whether there is substantial evidence to support the school board's decision." Substantial evidence means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. We must determine whether Board was clearly erroneous by examining the evidence supporting its decision.

*Maasjo v. McLaughlin Sch. Dist.*, 489 N.W.2d 618, 621 (S.D.1992) (quoting *Moran v. Rapid City Area Sch. Dist.*, 281 N.W.2d 595, 599 (S.D.1979)). *See also Oldham–Ramona Sch. Dist. v. Ust*, 502

---

5.  Gauer further contends under her violation of due process claim that she offered to resign if the Board would rescind its motion to nonrenew her contract. This record does not conclusively establish that a formal settlement offer was made and rejected.

6.  Gauer also argues in part under this issue that the Board was erroneously permitted to utilize SDCL 13–10–12 before it went into effect in July of 2000. The record indicates that the Board presented the statute at the hearing, and that Poppe testified that under this new law he would be unable to recommend her for employment. The record does not indicate that Gauer had to "submit to a

criminal background investigation, by means of fingerprint checks by the Division of Criminal Investigation and the federal Bureau of Investigation" before obtaining employment at the Kadoka school, which is what SDCL 13–10–12 provides. Rather, the law was used only to point out what Poppe would do in the future. In this case, the law was not utilized to nonrenew the contract. The superintendent simply looked into a criminal record that was brought to his attention by the South Dakota Department of Education. Therefore, the argument that the introduction of this law resulted in an arbitrary and capricious decision is without merit.

N.W.2d 574, 580 (S.D.1993) (defining arbitrary and capricious).

[¶ 15.] Although the record contains evidence of insubordination and immorality by Gauer, we first acknowledge the evidence that indicates Gauer was in many respects a good teacher, not the sexual predator that the Board attempted to paint her as in its argument. There were numerous positive teacher evaluations in the record demonstrating Gauer performed well in the classroom. Furthermore, there is some evidence that Gauer did not hide the incident from the previous superintendent when she applied for her job in Kadoka. A letter to the previous superintendent of the Kadoka Schools from Gauer's treating certified sex counselor states the following:

> Miss Gauer has asked me to write to you concerning her counseling.... Miss Gauer is on probation, which included court-ordered counseling for a charge of sexual contact with a female high school student in North Dakota.
>
> * * *
>
> Miss Gauer exhibits remorse for her actions and is highly motivated to make the necessary changes to see that this does not happen again. Her prognosis for the completion of successful treatment is excellent at this time.

Gauer entered this evidence, but the Board and trial court were not convinced that the previous board was made aware of the North Dakota incident.

[¶ 16.] If the only evidence against Gauer was the North Dakota incident, the evidence may not have equated to "substantial evidence" or "relevant and competent" evidence for the Board not to renew Gauer's contract. *Maasjo*, 489 N.W.2d at 620. In this case, however, there was additional evidence to support the nonrenewal. Poppe's notes written after meetings with Gauer indicated that Gauer was critical of other staff members; had emotional outbursts and cried during meetings with Poppe; Gauer was difficult to work with; and Gauer yelled at Poppe, as well as other school staff members. Thus, signs of insubordination were presented.

[¶ 17.] Although we acknowledge the positive aspects of Gauer's teaching career in Kadoka, we are not to act as triers of fact in this case. Rather, we must adhere to our more limited standard of review. *Collins*, 1998 SD 17 at ¶ 13, 574 N.W.2d at 892. Under SDCL 13–43–6.1, "[a] teacher may be terminated, by the school board, at any time for just cause, including breach of contract, poor performance, incompetency, gross immorality, unprofessional conduct, insubordination, neglect of duty, or the violation of any policy or regulation of the school district." We find that the evidence of insubordination, in conjunction with the prior sexual conduct evidence, provides "just cause" for nonrenewal under this statute; there was adequate evidence to hold that the Board's decision was not arbitrary and capricious. *Maasjo*, 489 N.W.2d at 620.

[¶ 18.] We find any other issues raised to be without merit.

[¶ 19.] Therefore, we affirm.

[¶ 20.] GILBERTSON, Chief Justice, and SABERS, and KONENKAMP, Justices, and CALDWELL, Circuit Judge, concur.

[¶ 21.] GORS, Acting Justice, deeming himself disqualified, did not participate.

[¶ 22.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.