2003 SD 92

**Diana HICKS, Plaintiff and Appellant,**

v.

**GAYVILLE–VOLIN SCHOOL DISTRICT, Defendant and Appellee.**

**No. 22579.**

Supreme Court of South Dakota.

Argued Feb. 12, 2003.

Decided July 30, 2003.

Scott R. Swier of Doyle, Kennedy & Rokahr, Yankton, for plaintiff and appellant.

Gerald L. Kaufman, Huron, for defendant and appellee.

ZINTER, Justice.

[¶ 1.] Diana Hicks began teaching at the Gayville–Volin school in the fall of 1990. During the course of her employment, various administrators had concerns about her performance. In the spring of 2001, she was informed by the superintendent that her contract would not be renewed for the 2001–2002 school year. After a hearing before the Gayville–Volin School Board of Education (Board), the Board unanimously voted not to renew Hicks's contract. She appealed the Board's decision to circuit court. The circuit court affirmed the Board's decision. We affirm.

## FACTS

[¶ 2.] Hicks began teaching in the Gayville–Volin School District in the fall of 1990. During her ten years at Gayville–Volin, Hicks taught health, physical education, and social studies. For the 2000–2001 school year, Hicks taught 7th grade social studies, 6th–8th grade health, and K–8th grade physical education.

[¶ 3.] Throughout Hicks's employment, various administrators documented concerns about her performance. In 1995, Superintendent Dale Waysman was concerned that Hicks: used inappropriate examples; discussed students with other staff members where students could hear the conversation; had favorites in class; and, needed help with strategies concerning student evaluations and student discipline.

[¶ 4.] In the spring of 1997, Principal Nancy Fargo evaluated Hicks and implemented a formal plan of study (plan of assistance). The plan of assistance was instituted because Fargo believed that Hicks needed to improve in the use of instructional objectives, and those objectives needed to be in her lesson plans; she needed to improve her class preparation; she needed to get her grades to teachers as required; and, she needed to take courses for professional growth. Because

Hicks was placed on a plan of assistance, Fargo recommended that the Board renew Hicks's employment contract for the 1997–1998 school year.

[¶ 5.] During the 1998–1999 school year, the Board changed its evaluation program and adopted a teacher self-evaluation procedure. Hicks acknowledged that it was the teacher's responsibility to initiate that evaluation procedure. However, Hicks failed to initiate the self-evaluation, and she failed to meet with the principal to discuss the evaluation in order to determine whether the goals had been accomplished. Hicks specifically failed to indicate on the evaluation instrument how her identified goals would be measured in order to determine if those goals had been accomplished; she did not document whether the goals had been accomplished; and she failed to meet Fargo as required at the end of the 1998–1999 school year to discuss the evaluation. Hicks also failed to initiate the self-evaluation procedure for the 1999–2000 school year. Hicks failed to do so even though it had been requested by the administration and even though other staff members completed this requirement.

[¶ 6.] Jason Selchert was hired as the District's CEO for the 2000–2001 school year. He evaluated Hicks's class on January 24, 2001. He also placed Hicks on a plan of assistance. His concerns were that Hicks was not teaching all aspects of developmental activities, she was not sufficiently prepared for her classes, she did not give thorough and definite teaching directions, and she did not challenge students with "higher order thinking." Selchert subsequently opined that Hicks did not satisfactorily complete the plan of assistance, and he recommended that the Board not renew Hicks's teaching contract for the 2001–2002 school year. The Board accepted that recommendation, and Hicks

received written notice of the Board's decision not to renew her contract. Hicks was given the following reasons for the Board's decision:

1. Failure to meet the needs of the students,

2. Failure to follow the physical education plan of study,

3. Inability to successfully challenge students,

4. Failure to be prepared for all instructional duties, and

5. Inability to motivate herself in areas of deficiency to facilitate growth.

[¶ 7.] Hicks requested a hearing before the Board. At the conclusion of the hearing on May 24, 2001, the Board did not vote on Hicks's continued employment. The Board met a second time on May 31, 2001, and without making a final decision, invited Hicks and her attorney to meet with the Board in executive session on June 11, 2001. At the conclusion of the June 11 meeting, the Board voted not to renew Hicks's teaching contract. On June 26, 2001, the Board issued written findings of fact and conclusions of law in conformance with its decision.

[¶ 8.] Hicks appealed the Board's decision to the circuit court. The circuit court held a hearing to allow additional evidence concerning the procedure followed by the Board. The circuit court did not, however, hear additional evidence dealing with the merits of the Board's decision. After reviewing the record, the circuit court affirmed the Board's decision.

[¶ 9.] Hicks appeals the circuit court's ruling, raising two issues.

1. **Whether the Board acted arbitrarily, capriciously, or abused its discretion in non-renewing Hicks's teaching contract for the 2001–2002 school year.**

**2. Whether the procedural requirements of South Dakota's continuing contract law were followed, and if not, whether reinstatement is required.**

### STANDARD OF REVIEW

[¶ 10.] SDCL 13–46–6 allows a party to appeal a school board decision. That statute provides for a de novo trial to the circuit court.

> The trial in the circuit court shall be de novo according to the rules relating to special proceedings of a civil nature so far as such rules are applicable and not in conflict with the provisions of this chapter and the court shall enter such final judgment or order as the circumstances and every right of the case may require and such judgment or order may be enforced by writ of execution, mandamus, or prohibition, or by attachment as for contempt.

*Id.* Despite the "de novo" language of this statute, this Court has long held that the standard of review is not that traditionally used in an ordinary trial de novo. Instead, great deference is given to the good faith determinations of school boards whether to renew a teacher's contract. *Wuest v. Winner School Dist. 59–2,* 2000 SD 42, ¶ 12, 607 N.W.2d 912, 915; *Jager v. Ramona Bd. of Educ.,* 444 N.W.2d 21, 25 (S.D.1989). Consequently, we have repeatedly stated:

> [T]he circuit court's review is not a trial de novo in the ordinary sense of the phrase. School boards are creatures of the [L]egislature and the judiciary may not interfere with their decisions unless the decision is made contrary to law. Therefore, "[a]s long as the school board is legitimately and legally exercising its administrative powers, the courts may not interfere with nor supplant the school board's decision making process." Only the legality of the decision, not the propriety of the decision, may be reviewed by the courts. The legality of a school board's decision is determined by a two-prong review. First, the procedural regularity of the decision is reviewed. This review includes whether the school board was vested with the authority to act and whether all procedural requirements required by law were followed. Second, the school board's decision is reviewed to determine whether the decision was arbitrary, capricious or an abuse of discretion.

*Gauer v. Kadoka School Dist. No. 35–1,* 2002 SD 73, ¶ 5, 647 N.W.2d 727, 730 (further citations omitted).

[¶ 11.] An arbitrary or capricious decision is one that is: "based on personal, selfish, or fraudulent motives, or on false information, and is characterized by a lack of relevant and competent evidence to support the action taken." *Coyote Flats, L.L.C. v. Sanborn County Com'n,* 1999 SD 87, ¶ 14, 596 N.W.2d 347, 351 (quoting *Tri County Landfill Ass'n, Inc. v. Brule County,* 535 N.W.2d 760, 764); *see also Hendriks v. Anderson,* 522 N.W.2d 499 (S.D.1994); *Iversen v. Wall Bd. of Educ.,* 522 N.W.2d 188 (S.D.1994); *Riter v. Woonsocket School Dist., # 55–4,* 504 N.W.2d 572 (S.D.1993). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *In re South Dakota Microsoft Antitrust Litigation,* 2003 SD 19, ¶ 5, 657 N.W.2d 668, 671 (quoting *Black v. Class,* 1997 SD 22, ¶ 27, 560 N.W.2d 544, 551). "In applying the abuse of discretion standard, 'we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision.'" *Id.* (quoting *State v. Wilkins,* 536 N.W.2d 97, 99 (S.D.1995)). "Under such a standard of

review we must be careful not to substitute our reasoning for that of the [lower tribunal]." *Id.* (quoting *State v. Larson,* 512 N.W.2d 732, 736 (S.D.1994)).

 [¶ 12.] Although *Gauer* and some of our other decisions [1] have also included a reference to the "clearly erroneous" standard of review in discussing this second prong, we clarify that the clearly erroneous standard only applies to the facts determined by the school board. As we have noted on other occasions, the clearly erroneous standard of review applies when the question is one of fact. *Wuest,* 2000 SD 42, ¶ 12, 607 N.W.2d at 916; *Hughes v. Stanley County School Board,* 1999 SD 65, ¶ 15, 594 N.W.2d 346, 351; *Maasjo v. McLaughlin Sch. Dist. No. 15-2,* 489 N.W.2d 618, 621 (S.D.1992); *Aman v. Edmunds Cent. School Dist. No.*

---

1. *See, Collins v. Faith School District # 46-2,* 1998 SD 17, ¶ 13, 574 N.W.2d 889, 892; *Tschetter v. Doland Board of Education,* 302 N.W.2d 43, 45–46 (S.D.1981).

2. SDCL 13–43–6.1
 A teacher may be terminated, by the school board, at any time for just cause, including breach of contract, poor performance, incompetency, gross immorality, unprofessional conduct, insubordination, neglect of duty, or the violation of any policy or regulation of the school district.
 SDCL 13–43–6.2
 The superintendent or the school board shall give written notice of the termination to the teacher; a written statement of the reasons for the termination; access to the employment records of the teacher; the opportunity to the teacher for a hearing before the school board to present reasons in person or in writing why the termination should not occur; and the opportunity to be represented. The hearing provided by this section shall be requested within fifteen days after receipt of the notice. The school board shall conduct the hearing not sooner than fourteen days, nor later than forty-five days, after receipt of the teacher's request for hearing. The parties may waive the time limitations provided for in this section.
 SDCL 13–43–6.3

*22-5,* 494 N.W.2d 198, 199 (S.D.1992); *Kellogg v. Hoven Sch. Dist. No. 53-2,* 479 N.W.2d 147, 150 (S.D.1991); *Jager,* 444 N.W.2d at 26. Therefore, notwithstanding language to the contrary, we do not apply the clearly erroneous standard of review to determine whether under the facts, the board's decision was arbitrary, capricious or an abuse of discretion.

## DECISION

[¶ 13.] **1. The Board did not act arbitrarily, capriciously, or abuse its discretion in non-renewing Hicks's teaching contract for the 2001–2002 school year.**

 [¶ 14.] The continuing contract law for teachers is found in SDCL §§ 13–43–6.1 to 6.6.[2] SDCL §§ 13–43–6.1, 6.2

---

Until a teacher is in or beyond the fourth consecutive term of employment as a teacher with the school district, a school board may or may not renew the teacher's contract. The superintendent or school board shall give written notice of nonrenewal by April fifteenth but is not required to give further process or a reason for nonrenewal. After a teacher is in or beyond the fourth consecutive term of employment as a teacher with the school district, §§ 13–43–6.1 and 13–43–6.2 apply to any nonrenewal of the teacher's contract. On or before April fifteenth, the school board shall notify the teacher in writing of its intention to not renew the teacher's contract.
Acceptance by the teacher of an offer from the district to enter into a new contract with the teacher shall be in the manner specified in the offer. Failure of the teacher to accept the offer in the manner specified shall result in the termination of the existing contract between the teacher and the district at the end of its term.
SDCL 13–43–6.4
Notwithstanding §§ 13–43–6.1 to 13–43–6.3, inclusive, if a teacher's contract is not renewed due to a reduction in staff, only written notice is required, which shall be provided by the school board to the teacher by April fifteenth.
SDCL 13–43–6.5

and 6.3 grant tenure to teachers who are in or beyond their fourth consecutive term of employment with a school district. If a teacher is tenured, the Board must have just cause to terminate, and the board must give written notice of the reasons for non-renewal. It must also give the teacher access to employment records, an opportunity for a hearing, and an opportunity to be represented. SDCL 13–43–6.2. The purpose of these tenure statutes is to provide teachers with employment security and to prevent dismissals without cause. However, tenure does not prohibit a school board from non-renewing a teacher's contract. Tenure simply entitles a teacher to the procedural and substantive due process rights set forth in these statutes before a teacher's contract is terminated or not renewed. *Iverson v. Wall Board of Education,* 524 N.W.2d 624, 626 (S.D.1994) (*Iverson II*).[3]

[¶ 15.] In considering whether the Board's decision was arbitrary, capricious, or an abuse of discretion, we first note that there had been concerns about the quality of Hicks's teaching since 1995. She was placed on a plan of assistance three separate times. Each time Hicks's performance would improve while on the plan and then deteriorate again as soon as she completed the plan. Even though she recognized that the work she did under the plans of assistance was beneficial to her, she stopped the work improvement as soon as the plans ended. She also failed to participate in the District's self-evaluation program even though she was reminded to

do so. These failures were relevant and competent evidence that a reasonable board might accept as adequate to support the conclusion that her contract should not be renewed.

[¶ 16.] Although Hicks does not contest these facts, she first contends that the administration did not make an effort to contact her and have her come into the office to talk about her deficiencies. However, Hicks was reminded that she needed to set up an appointment to talk to her supervisor about her self-evaluation, and she failed to follow through. Moreover, this Court defers to the Board's findings of credibility especially in cases such as this where the Board specifically found that Hicks's testimony at the Board hearing was not credible.

[¶ 17.] Notwithstanding the deference we give to credibility determinations, Hicks argues that Jason Selchert was not a credible evaluator. We addressed a similar conflict over the qualifications of the evaluator in *Iversen v. Wall Board of Education,* 522 N.W.2d 188 (SD 1994) (*Iversen I*). There, a tenured teacher filed a grievance because she disagreed with the principal's assessment. *Id.* at 190–191. One of the teacher's arguments was that the principal was inexperienced. However, we noted that although that principal was relatively new to the school district, the school board determined that his education and experience qualified him to evaluate staff. *Id.* at 193.

A teacher's employment may not be terminated because of the amount of the teacher's compensation.
SDCL 13–43–6.6
Although a collective bargaining agreement between a district and its teachers may set forth specific additional grounds for termination or set forth provisions as to the procedure or notice, no agreement may

limit the district's right to terminate a teacher for the grounds set forth in §§ 13–43–6.1 to 13–43–6.3, inclusive. No agreement may limit the protection afforded to a teacher under § 13–43–6.5.

3. *Iverson II* relied on SDCL 13–43–9.1 *et seq.* These statutes were repealed in 1995 and were replaced by SDCL 13–43–6.1 to 6.6.

[¶ 18.] Here, the Board determined that Selchert was qualified to conduct employee evaluations. Although Selchert was new at the school, the record reflects that he had completed graduate level administration courses, including courses on staff supervision. Selchert was also a school principal before he became the District's CEO. Moreover, Selchert was the third administrator to place Hicks on a plan of assistance. Finally, Hicks had been on this latest plan of assistance for almost two months before Selchert determined that it was in the best interests of the Board not to renew her contract. Under these facts, we conclude that a reasonable Board member could have adopted Selchert's opinions over Hicks's.

[¶ 19.] Hicks finally argues that the evidence presented to the Board was not sufficient to justify the non-renewal when it is compared to our decisions in *Gauer*, 2002 SD 73, 647 N.W.2d 727; *Wuest*, 2000 SD 42, 607 N.W.2d 912; *Collins*, 1998 SD 17, 574 N.W.2d 889; and *Jager*, 444 N.W.2d 21. We disagree.

[¶ 20.] *Gauer* stands for the proposition that a single incident may not justify the non-renewal of a contract, and that a board should consider all relevant information. *Gauer*, 2002 SD 73, ¶ 17, 647 N.W.2d at 733. This case, however, involved more than a single incident, and Hicks has not identified any relevant information that was not considered.

[¶ 21.] In *Wuest*, we sustained a board decision not to renew a contract because the teacher had been on a plan of assistance and had failed to complete that plan of assistance satisfactorily. The board in *Wuest* held a hearing and "heard evidence from both sides on the issue of whether or not to renew the contract." *Wuest*, 2000 SD 42, ¶ 38, 607 N.W.2d at 920. We concluded that the Board "was in the best position to judge the credibility of the witnesses and to weigh the facts." *Id.* We ultimately held that the school board decision "[was] not contrary to the evidence in [that] record." *Id.* So also, this Board decision was based on credibility determinations, and it was not contrary to the evidence in the record.

[¶ 22.] Although a board termination was reversed in *Collins*, that case is distinguishable. It is distinguishable because in that case, the teacher had twenty-nine years of satisfactory service, but that contract was terminated after just one error in judgment. While not approving a termination under those circumstances, we did however note that "[a] person who habitually fails to perform his work with the degree of skill or accuracy usually displayed by other persons regularly employed in such work is incompetent. And the same is true of one who usually performs substantially less than others regularly so employed." *Collins*, 1998 SD 17, ¶ 18, 574 N.W.2d at 893 (quoting *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 297 (S.D.1982)). This case falls within the latter rule because Hicks had been on three plans of assistance by three different administrators. Hicks's failures were not a single error in judgment.

[¶ 23.] *Jager* is distinguishable for the same reasons. In that case the teacher had five years of excellent evaluations prior to an evaluation in which a principal noted only one area that needed improvement. *Jager*, 444 N.W.2d at 26. Moreover, Jager was not placed on a plan of assistance following the evaluation that revealed a need for improvement. On the other hand, three different administrators noted deficiencies in Hicks's performance, she was placed on three different plans of assistance, and she did not successfully complete the last plan of assistance. *Jager* is therefore distinguishable.

[¶ 24.] We conclude that the Board's decision was not arbitrary, capricious, or an abuse of discretion.

[¶ 25.] **2. Most of the procedural requirements of South Dakota's continuing contract law were followed. To the extent they were not, reinstatement is not required.**

[¶ 26.] This issue focuses on the procedural prong of the standard of review. The question is whether the Board had authority to act and whether it followed all procedural requirements.

[¶ 27.] The Board's authority to act is found in SDCL 13–43–6.1 to 6.6. *See* n. 2, *supra*. SDCL 13–43–6.1 provides that a teacher may be terminated for just causes, including incompetency, poor performance, and insubordination. In this case, the Board made its decision not to renew Hicks's contract for five reasons involving poor performance. *See* ¶ 6, *supra*. Therefore, the Board had the authority to terminate for just cause under SDCL 13–43–6.1.

[¶ 28.] In addition to having authority to act, the Board must also comply with all procedural requirements. *Iverson II*, 524 N.W.2d at 626 (quoting *Jones v. Sully Buttes Schools*, 340 N.W.2d 697, 699 (S.D.1983)). The relevant procedural requirements include written notice of the Board's intent to non-renew the contract, a written statement of the reasons for non-renewal, access to employment records of the teacher, opportunity for a hearing, and the right to be represented by counsel. SDCL 13–43–6.2.

[¶ 29.] The Board afforded Hicks these rights. The Board provided Hicks with a written notice of non-renewal, which included the reasons for the non-renewal. She requested a hearing before the board, which took place on May 24, 2001.[4] At the hearing, Hicks was given an opportunity to present reasons, in person or in writing, why the termination should not occur. In addition, the Board met in executive session with Hicks and her attorney on June 11, 2001. Although this executive session was not a typical board procedure, it did not violate any statutory requirements.[5]

[¶ 30.] In addition to statutory procedures, school board policies have the force of law and must be complied with. *Iverson II*, 524 N.W.2d at 628; *Schnabel v. Alcester School District*, 295 N.W.2d 340, 341 (S.D.1980). However, not every violation of a school policy will result in reinstatement. *See, Schaub v. Chamberlain Board of Education*, 339 N.W.2d 307, 310 (S.D.1983); *Fries v. Wessington School District*, 307 N.W.2d 875, 879 (S.D. 1981). A procedural violation will only justify reinstatement if the teacher proves that the violation directly and substantially impaired the teacher's ability to improve. *Id.*

> [The] proper test in determining whether reinstatement is the proper remedy for a violation of the teacher evaluation statutes or the collective bargaining agreement is whether a grievant has shown that the violation substantially and directly impaired his or her ability to improve himself or herself[.]

*Id.*

[¶ 31.] Here, Hicks first claims that she was improperly compared with

4. The hearing was held within forty-five days, and not sooner than fourteen days, as mandated by SDCL 13–43–6.2.

5. The fact that Hicks was given this additional opportunity to address the concerns of the board was to her benefit, and she has not demonstrated prejudice.

other faculty members in violation of a Board policy. We disagree. The purpose of this Board policy was to discourage teaching comparisons of teachers. However, none of Hicks's complaints involved such comparisons. Instead, the comparison of Hicks's conduct with others was unrelated to teaching methods or abilities. The comparisons to other teachers related only to compliance with school procedures and Hicks's failure to follow those procedures.[6]

[¶ 32.] Hicks also claims that school policy was violated because the evaluation documents were not "signed and dated" by both parties. However, Hicks admitted that she received a copy of the evaluation, which was put in her mailbox. Moreover, she never made any effort to discuss the evaluation with the administration. Such technical violations did not impair her ability to improve herself.

[¶ 33.] In a related matter, Hicks claims that the school administration did not comply with her procedural rights because her last evaluation did not include any recommendations for improvement. Hicks also claims that a particular "process improvement plan" was not completed or shared with her. However, the last evaluation articulated her deficiencies and the specific requirements for improvement. Moreover, Hicks admitted that she received the written report of her classroom observations, albeit not on the particular required form. She also received a memo, 27 days after she had been placed on the plan of assistance, from the administrator advising her that her "weekly outlines" were not the "specific daily class outlines" that had been requested; that she needed to use the "Madeline Hunter" model in her lesson plans (which had not been used to that point); and that she needed to make notes on her lesson plans to describe the things that were and were not working.

[¶ 34.] Thus, through the documents Hicks possessed, her deficiences were identified. Moreover, Selchert sat down with her and explained the plan of assistance. Selchert also gave her his evaluation recommending a nonrenewal before he had even talked to the Board about it. Finally, as the trial court noted, "Hicks had been placed on several plans of assistance which contained recommendations for improvement so that she was aware of what the administration wanted." However, Hicks did not follow through. We have previously noted that a record which establishes that the superintendent was standing ready to meet and assist, coupled with a teacher's failure to use the opportunity to respond, question, object and ask for clarification or show where the superintendent was wrong in the evaluation, may preclude a finding that more specific assistance would have been effective. *Nordhagen v. Hot Springs School District No. 23–2*, 474 N.W.2d 510, 513 (S.D.1991). The burden is on the teacher challenging the Board's decision to overcome the presumption that the Board was acting in good faith. *Id.* (citing *Lantz v. Chamberlain Independent School District # 1*, 254 N.W.2d 155 (S.D.1977)). Here, Hicks has failed to meet that burden. Hicks did not sign a document which she admits receiving; she did not receive other documents, but received the information that would have been contained in them; and although she may not have had the extent of a formal face-to-face review with the administration that normally occurs,

6. Fargo testified: that she had to personally obtain Hicks's grades from her, but, Fargo did not have to do that with other teachers; that Fargo sent out a notice to all staff members to go over their evaluation form with her, but Hicks did not do so; and that Fargo conducted a classroom observation with Hicks and every other staff member.

that failure did not substantially and directly impair her ability to improve herself.[7] *Schaub*, 339 NW2d at 310.

[¶ 35.] We affirm.

[¶ 36.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

---

**7.** We also note there was a dispute of fact over the extent of the review. The administrator denied that he had failed to honor her request to see if her lesson plans met his approval. We do not second guess these credibility determinations on appellate review.