280 So.2d 603 (1973)
Mrs. Helen PITCHER et al., Plaintiffs-Appellants,
v.
IBERIA PARISH SCHOOL BOARD, Defendant-Appellee.
No. 4213.
Court of Appeal of Louisiana, Third Circuit.
July 10, 1973.
Rehearing Denied July 30, 1973.
Writ Refused October 12, 1973.
*604 Shaw & Shaw by William M. Shaw, Homer, for plaintiff-appellant.
Sargent, Pitcher, Baton Rouge, for plaintiff-appellant.
Leon E. Roy, Jr., New Iberia, for defendant-appellee.
Before SAVOY, MILLER, and DOMENGEAUX, JJ.
SAVOY, Judge.
Plaintiff, Mrs. Helen Pitcher, was discharged from her position as a classroom teacher in the Iberia Parish Schools, by the School Board of that parish. The dismissal of plaintiff was a consequence of her failure to comply with a newly instituted policy of the School Board that required all classroom teachers to submit to an annual physical examination, by a physician of their choice, and to have the physician forward to the School Board his opinion of the teacher's fitness to teach.
Plaintiff and her husband filed suit on March 4, 1969, against the School Board seeking her reinstatement, damages and attorney's fees, and in addition they brought a class action on behalf of all classroom teachers in Iberia Parish seeking a declaration of the invalidity of the physical examination requirement above referred to, plus damages, attorney's fees and costs. Defendant filed numerous exceptions, all of which were overruled. It then filed an answer. Following a trial on the merits, the District Court rejected plaintiff's contentions on all points and dismissed both their individual and their class action at their costs. They appealed to this court.
The first issue to be determined by us is that of whether plaintiff was a tenured teacher or a probationary teacher, as if she was a tenured teacher her dismissal is conceded by the School Board to have been improper in any case. In this connection the facts show that plaintiff, who had previously taught in East Baton Rouge Parish and had acquired tenure there, began her teaching career with the Iberia Parish Schools in September of 1961. She taught there continuously until 1966, and therefore under LSA-R.S. 17:442, she became a tenured teacher in Iberia Parish. In July of 1966, however, plaintiff withdrew from the Iberia Parish Schools, signing two written statements to the effect that she was withdrawing from teaching in the public schools of Louisiana and had no intention of returning to that profession. The statements referred to were signed in connection with the withdrawal of her accumulated contributions in the Louisiana School Employee's Retirement System, and read as follows:.....
I am not now employed and do not now expect to be employed again in the public schools of Louisiana. I inclose my certificate of membership.
 Signed Helen S. Pitcher (Mrs.)
Dear Superintendent:
I am not now employed and do not intend to be employed again in the public schools of Louisiana. Therefore, I desire to withdraw the accumulated contributions to my credit in the Louisiana School Employees Retirement System. In order for me to do this, it is necessary that you complete, sign, and mail to the office of the Retirement System this form. I shall very much appreciate it if you will do this for me promptly.
 Signed Helen S. Pitcher (Mrs.)
Nevertheless, plaintiff did return to teaching in the Iberia Parish School System in January of 1967, from which time she taught continuously until January 23, 1969, when the discharge now under consideration took place.
*605 It is plaintiff's contention that under LSA-R.S. 17:442 once tenure is acquired by a school teacher it is retained by such teacher for life, and she cites the case of Hayes v. Orleans Parish School Board, 225 So.2d 131 (La.App. 4th Circuit, 1969) as authority for her view. The Hayes case had nothing to do with a situation such as the one before us where a tenured teacher has resigned her position stating her intention never to return thereto, but rather deals with a situation in which a tenured teacher was promoted to a higher level and salary and was later demoted. Our brothers of the Fourth Circuit Court of Appeal, after stating that the problem before them was a determination of whether there is simply an initial three-year probationary period before acquiring tenure as a permanent teacher or there is a three-year probationary period for each new level or position attained, concluded that once a teacher has acquired tenure he is not required to serve a three-year probationary term in each new level of promotion attained. (We should note here that LSA-R.S. 17:444 and 17:463 were amended in 1968 to, in effect, legislatively overrule the holding of the Hayes case.) We have been cited no cases, and have found none, which encompass the type of situation presently before us, where a teacher had voluntarily left the school system after acquiring status as a permanent or tenured teacher. Nevertheless, at 78 C.J.S. verbo, Schools and School Districts § 180, at page 1029, we find the following:
"Where a teacher who has acquired classification as a permanent teacher resigns and leaves the school system, the classification does not survive, and the teacher is not thereafter entitled to be classified as a permanent teacher by reason of prior service."
That, we think is the proper rule to be followed in cases such as this. The undesirable consequences to which any other holding could lead are evident. In view of the stringent requirements set out in LSA-R.S. 17:443 for the removal of such, it could well be argued that once a teacher has acquired tenure she could voluntarily terminate her employment with the School Board and then, after a period of time of any length, demand to be reinstated in her former position. Is the School Board then to make room for such a returning teacher, or principal, by discharging or demoting others of its employees who may themselves have acquired tenure in the meantime? Or we could ask whether a School Board has no right to test the ability of the teacher rehired after a period of perhaps twenty years, during which time she has done no teaching, simply because prior to her period of absence she enjoyed tenure in the schools of that parish. The havoc that affirmative answers to such questions would work on the school systems of our State and the consequent impairment of their function, are obvious, and we therefore conclude that when plaintiff voluntarily retired from the school system in 1966, and withdrew her share of the accumulated retirement benefits, she lost her tenure.
The second issue to be dealt with is plaintiff's contention that even if she was a probationary teacher she was not discharged in accordance with law. LSA-R.S. 17:442 provides in relevant part that:
"... During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor...."
It is true as contended by plaintiff that the letter to her from Claude O. Duhon, Superintendent of the Iberia Parish School Board, dated January 21, 1969, informing her that her employment would be terminated as of January 23, 1969, was not sufficient compliance with the above quoted statute as to make her discharge thereunder valid. The erroneous procedure, however, was of short duration as on January 29, *606 1969, Superintendent Duhon wrote a letter to the Iberia Parish School Board recommending dismissal of plaintiff on the grounds of neglect of duty for failure to comply with the rules and regulations of the Board. His recommendation for dismissal was taken up and approved at the February 12, 1969, meeting of the School Board and plaintiff, Mrs. Pitcher, was immediately notified in writing of the action taken by the Board. The School Board did not pay Mrs. Pitcher for the period of January 23 to February 12, 1969, until June, 1969, when tender of a check for $600.00 covering one month's salary was made to her. The tender was refused but subsequently the trial court ordered that sum delivered to Mrs. Pitcher. Clearly, then, there was compliance with the provisions of LSA-R.S. 17:442 if the reasons given by the Superintendent for the proposed dismissal were valid.
That brings us to the principal issue in this case, which is whether or not a parish school board has the right to require its school teachers and other personnel to submit to an annual physical examination by a physician of their choice, and to require that the said physician certify the fitness of the teacher or other employee to hold his or her position. That of course is the central issue because if the regulation requiring the physical examination, and certification, is not one which the School Board has a right to adopt and implement, there was an absence of valid reasons for the discharge of plaintiff. (There is no question of Mrs. Pitcher's ability as a teacher and her competence was established by the evidence.)
We quote now the forms which the examining physicians are to follow in making their examination. Only the bottom portion of the first form, beginning with "I have examined ..." was to be returned to the School Board at the time that plaintiff was discharged, although when the School Board first decided to require the physical examination the entire form was to be returned to it. That policy was abandoned, however, when the teachers protested, and it was decided that only the bottom portion should be made part of the School Board's records.
IBERIA PARISH SCHOOL BOARD PHYSICAL EXAMINATION FORMS
Name of Employee __________________________________________
Address ___________________________________________________
Age ____ Sex: M_____ F_____ Height ________ Weight ________
Physical Fitness:
-----------------
 1. Eyes: Visual Acuity R_____ L_____ Glasses Proper: Yes ___ No. ___
 Field of Vision ___________________ Color-Blind (red-green)
 2. Ears: Right _________________ Left Ear __________________________
 Hearing: Right Ear ___ Left Ear ___
 3. Heart __________________________ Lungs __________________________
 4. Blood Pressure __________________________________________________
 5. Urine Analysis __________________________________________________
 6. Evidence of Epilepsy, Diabetes, extremes or fluctautions in Blood Pressure,
 or ailments which might cause temporary loss of consciousness
 _____________________________________________________________________
 7. Existing Communicable Disease (s) _______________________________
 8. Wasserman or Kahn Test ___________ Tuberculin Test ______________
 Chest X-Ray ___________________
*607
 9. Amputation of Members: Arm ______ Hand ______ Fingers ___________
 Leg ______ Foot ______ Toes ______
 10. Abnormal condition of spine _____________________________________
 11. History of mental lapses; derangements, etc. ____________________
 12. Use of alcohol, narcotics, drugs ________________________________
 13. History of illness during preceding years _______________________
 ______________________________________________________________________
 I have examined _____________________________________________ and find
 him/her to be free in accordance with the items listed above, from any
 ailments, disease, or defect that might affect his ability to perform his duties
 for the Iberia Parish School Board.
 Date ________________________ Signed _________________________________
 Examining Physician
DOCTOR: Please mail this form to:
 Iberia Parish School Board, P. O. Drawer 520,
 New Iberia, La. 70560
 IBERIA PARISH SCHOOL BOARD
 RE-CHECK OF BLOOD PRESSURE OR OTHER ABNORMALITY
Name _______________________ Age ____________ Date ______________________
Heart and blood vessel examination done ___________________ for the above
 date
indicates that he _________, __________ unduly susceptable cardiovascular
 is is not
accidents. Pertinent findings ___________________________________________
_________________________________________________________________________
_________________________________________________________________________
_________________________________________________________________________
_________________________________________________________________________
_________________________________________________________________________
 _____________________________M.D.
 Signature of Physician
The thrust of plaintiff's argument is that the School Board's requirement that she submit to the physical examination, under the above quoted form, and that the examining physician certify her fitness to teach, violates her constitutional right to privacy. She argues that the examination would make it necessary for her to divulge a number of personal matters such as what medication she takes, the extent of her use of alcohol or drugs, family histories of such hereditary diseases as epilepsy, etc., such non-communicable physical deficiencies as amputations, and other information which she regards as being unrelated to her proficiency, skill, or dedication as a teacher. In support of her views she cites certain jurisprudence, notably the case of Hamilton v. Lumbermen's Mutual Casualty Company, 82 So.2d 61 (La.App. *608 First Circuit, 1955), writ refused, November 7, 1955, dealing with the individual's right to privacy. We do not lack familiarity with the right to privacy nor do we quarrel with same. We do opine, however, that reasonable interferences therewith, if properly authorized and taking place under proper circumstances, are not prohibited by either the law or the jurisprudence.
There is substantial evidence in the case at bar, in particular the testimony of Dr. J. L. Comeaux, a member of the School Board, and Dr. Murphy Martin, Director of the Parish Health Units in Lafayette, Iberia, and St. Martin Parishes, Louisiana, both medical doctors, to the effect that all of the points covered by the medical examination were either directly or indirectly related to the teacher's ability to perform her duties either at present or in the near future. The latter consideration, while not directly or immediately derogating from the teacher's efficacy, is certainly an important consideration which must be taken into account by the School Board in planning its personnel requirements. Thus there appears to be ample reason for requiring the physical examination.
The manner in which the School Board seeks to conduct it is designed to effectuate a minimal invasion of the teacher's privacy. The teacher is free to seek out a physician of her choice and the results of the examination are divulged to no one save the teacher. It is only the physician's ultimate conclusion, based on his findings and the history given him, regarding the fitness of the teacher to continue in her employment, that is made available to the School Board. Should the physician take an arbitrary position and refuse to certify the teacher as being fit to teach, there is nothing in the regulations to prohibit her from seeking out other, more tolerant physicians.
As a practical matter we note that of the 662 teachers that were employed in the New Iberia Parish School System at the time of plaintiff's dismissal only she refused to permit her physician to certify her fitness to teach. Both she and her physician, Doctor Oscar M. Alvarez, testified that she had in fact taken the physical examination and passed it. She would not, however, permit Doctor Alvarez to mail his certification of her fitness to the School Board. We further note that plaintiff was in the habit of being tested for communicable diseases, such as tuberculosis, on a yearly basis in the past. Such tests, together with many of the other tests required in the physical examination, were available to the teachers free of charge at the Parish Health Units, thus minimizing the cost of the physical examinations required by the School Board.
There is a presumption of regularity and validity that attaches to the discretionary actions of school boards and limits the power of judicial review over such actions. Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App. 3rd Circuit, 1965). Considering the evidence in view thereof, we are unable to hold that the regulation in question was so unsupported by reason as to exceed the power vested in the School Board, and hence we find no manifest error in the trial court's decision upholding the regulation. It is not within the power of the courts to substitute their views for those of a School Board when there is a rational basis for the latter's policies and determinations. Blanchet v. Vermilion Parish School Board, 220 So.2d 534 (La. App. 3rd Circuit, 1969). Having reached this conclusion we need not discuss the other points raised by plaintiff's appeal.
For the above and foregoing reasons the judgment of the District Court is affirmed at the costs of plaintiffs-appellants in both courts.
Affirmed.