2004 SD 47

**HILL CITY EDUCATION ASSOCIATION, Petitioner and Appellee,**

v.

**HILL CITY SCHOOL DISTRICT 51-2 and Board of Education, Respondents and Appellants.**

**No. 22945.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided April 7, 2004.

---

Anne Crowson Plooster, South Dakota Education Association, Pierre, South Dakota, Attorney for petitioner and appellee.

Donald P. Knudsen of Gunderson, Palmer, Goodsell & Nelson, Rapid City, South Dakota, Attorneys for respondents and appellants.

KONENKAMP, Justice.

[¶ 1.] Under the Hill City School District's collective bargaining agreement with the Hill City Education Association, health benefits were to be provided to the District's employees. At the end of the school term in June, the District terminated health benefits for those employees who would not be returning the next year. The Association contested the decision, and the dispute went to the Department of Labor. In denying the Association's grievance, the Department found that the negotiated agreement was ambiguous on when benefits were to end and ruled that the District's past practices controlled. The circuit court reversed, holding that the agreement was not ambiguous and that non-returning employees were enti-

tled to receive health benefits until the negotiated agreement expired in August. We affirm because the negotiated agreement unequivocally provided that all employee contracts would commence on August 15, 2000 and end on August 15, 2001.

### Background

[¶ 2.] On July 11, 2000, the Hill City School District and the Hill City Education Association entered into a negotiated agreement. Article IX, Section 9.4 stated that the "provisions of the Agreement shall be effective as of the 15th day of August 2000, and shall continue and remain in full force and effect as binding on the parties until the 15th day of August 2001." In the spring of 2001, the District notified staff members who would not be returning for the following school year that their health insurance "terminates June 30, 2001."

[¶ 3.] When the parties were unable to reach a satisfactory resolution, the Association petitioned the South Dakota Department of Labor. The petition alleged that the District violated, misinterpreted, or inequitably applied the negotiated agreement when it terminated health benefits in June for "certified staff members" who would "not be returning" for the next school year. The Association claimed that under the terms of the agreement, the District was required to provide health and

dental insurance until August 15, 2001.[1] The Department concluded that the District had not violated the negotiated agreement because it was ambiguous on when benefits were to end for "teachers not returning for the next year"; consequently, the District's past practice of terminating benefits at the end of the school term was controlling.

[¶ 4.] On appeal, the circuit court reversed the Department's decision. In a memorandum opinion, the court scrutinized each part of the negotiated agreement claimed by one side or the other to be controlling and then concluded that, as a whole, the agreement was not ambiguous on the duration of benefits. The court ruled that teachers who had fulfilled their obligations under their individual contracts remained entitled to benefits until August 15. Furthermore, the court held that because the negotiated agreement was unambiguous, the District's past practices could not modify the agreement.[2] In this appeal, the District questions "whether [it] violated, misinterpreted or inequitably applied the negotiated agreement when it cancelled fringe benefits at the end of the school year rather than at the end of the term of the negotiated agreement for certified staff members who resigned, retired or whose contracts were not renewed."[3]

1. Article V of the negotiated agreement provides:

5.1 HEALTH BENEFITS—The school district shall pay 80% of a family or 80% of a single health insurance plan premium as of September 1 each school year. The health plan must be the school insurance plan. This benefit is for full time equivalency employees only. Employees who are less than full time (and otherwise qualify for this benefit) will have this benefit prorated based on their percentage of full time equivalency.

5.2 DENTAL INSURANCE—The school district shall pay 100% of the dental insurance premium (single premium) for each em-

ployee. The dental plan must be the school insurance plan.

2. The District does not argue now that its past practice modifies the agreement. Rather, it argues only that "[i]f the contract is silent or ambiguous, the parties' past practices establish that the parties did not intend for the School District to provide fringe benefits to non-employees during the summer months[.]" Because we do not interpret the agreement as ambiguous, we need not address this argument.

3. Although the record is not clear on what precise circumstances caused these employees to not return, the ALJ classified them as

## Analysis and Decision

[¶ 5.] Our standard of review for agency decisions is governed by SDCL 1–26–36. Great weight is given to an agency's findings on factual questions and inferences drawn from them. SDCL 1–26–36; *Moonlight Rose Co. v. South Dakota Unemployment Ins. Div.*, 2003 SD 96, ¶ 5, 668 N.W.2d 304, 307 (citation omitted). With questions of law, however, our review is de novo. *Id.* Contract interpretation presents a question of law. *Auto Owners Ins. Co. v. Enterprise Rent–A–Car Co.-Midwest*, 2003 SD 52, ¶ 7, 663 N.W.2d 208, 209–10.

[¶ 6.] When disputes arise over a contract, they are resolved with reference to contract law. *Wessington Springs Educ. Ass'n v. Wessington Springs School Dist.* 36–2, 467 N.W.2d 101, 104 (S.D.1991). Both sides here agree that the negotiated agreement is not ambiguous. "[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement." *Estate of Fisher v. Fisher*, 2002 SD 62, ¶ 12, 645 N.W.2d 841, 845 (citation omitted).

[¶ 7.] The District's argument rests on the proposition that teachers whose contracts are not renewed for the following school term are no longer considered "employees" under the negotiated agreement when they complete the school term. Thus, in the District's reasoning, non-returning teachers who complete all their contractual obligations are not enti-tled to benefits up to the expiration of the negotiated agreement. On the other hand, returning teachers who complete all their obligations are entitled to benefits until the expiration of the negotiated agreement.

[¶ 8.] The District supports its position by characterizing individual teacher contracts as in force only during the "school term." Non-returning teachers, the District argues, "earned the salary stated in the individual teacher contracts between September 5, 2000 and May 24, 2001," and therefore, when their contracts are fully performed, their employment ends. This is a misreading. Those individual contracts simply obligate employees to perform their duties during the school term, as set out in the school calendar.[4] Under the provisions of the negotiated agreement, however, the teachers also earn a full year of health and dental benefits by performing their contractual obligations between September 5, 2000 and May 24, 2001.

[¶ 9.] The plain effect of the contractual language contemplates that benefits arising under the agreement end on the "15th day of August," not at the end of the school term. And because the individual contracts do not provide a terminal date, the District's reference to SDCL 13–43–6.3 is of no avail. That statute provides that a contract of a teacher who fails to accept an offer of renewal "shall result in the termination of the existing contract between the teacher and the district at the end of its term." Here, the end of the term for each contract was August 15. The negotiated

---

"certified staff members who resigned, retired or whose contracts were not renewed." We do not interpret this to include those employees who were terminated for cause or those who retired or voluntarily quit before the end of the school term.

4. Each individual teacher contract provided that the 2000–2001 school term would begin "on or about September 5, 2000." Each contract also provided that "this contract shall be subject to the official school calendar adopted by the school board." The official school calendar provided that the school term would end on May 24, 2001.

agreement effectively provided that all its provisions were incorporated in each teacher's contract because Article IX, section 9.2 of the negotiated agreement states, "[t]he terms and conditions of this Agreement shall be reflected in individual teacher contracts."

[¶ 10.] The District also argues that a notification of nonrenewal terminates a teacher's contract. But nonrenewal means only that a teacher's contract will not be renewed with another contract. Simply because a teacher or the District decides that no new contract will be made for the next year does not necessitate the conclusion that the current contract must end earlier than its agreed upon ending date. Nor does a teacher's notification of nonrenewal equate to consent to terminate a contract. The District argues that the individual contracts of teachers whose contracts are not renewed are terminated at the end of the school term by mutual consent. Nothing in the contractual documents suggests that notification of nonrenewal equates with consent to terminate a present and valid contract.

[¶ 11.] Finally, the District contends that "[t]he only way the liquidated damages provision in the individual teacher contracts makes sense is if the contract expires at the end of the school term." Liquidated damages are set out in the individual teacher contracts as follows:

If the teacher initiates the termination of this contract prior to its terminal date, the school district may withhold from any monies due the teacher or collect from the teacher the sum of one hundred dollars ($100.00) as liquidated damages if such termination occurs on or before May 31; two hundred fifty dollars ($250.00) if between June 1 and June 30; five hundred dollars ($500.00) if between July 1 and July 31; seven hundred fifty dollars ($750.00) if after

August 1 and prior to the start of school; and one thousand five hundred dollars ($1500.00) if the teacher initiates the termination of this contract after school has convened.

From this provision, the District argues, "if a teacher taught the entire 2000–2001 school term, but then resigned or retired, he/she could be charged with liquidated damages." This would be an absurd result, the District contends, because, if the contractual obligations lasted until August 15, liquidated damages would apply to teachers who had fulfilled their contractual duties and then retired or resigned at the end of the school term.

[¶ 12.] Although there is some cogency to this argument, we can only conclude from the combined language of the negotiated agreement and the individual teacher contracts that the duration of the school term and the duration of the negotiated agreement were not intended to be coterminous. That seems clear in the language of the negotiated agreement—the effective the master agreement—which provides for the contract to end on August 15. Moreover, the liquidated damages provision awards damages to the District in the event a teacher "*initiates* the termination of [the] contract." We cannot view as reasonable an interpretation that requires us to redefine the phrase "initiates the termination" as "will not be renewed at the end of the school term."

[¶ 13.] In summary, the negotiated agreement extends health and dental benefits to "employees." Non-returning employees maintain their status as employees until the expiration of the negotiated agreement. There is no basis to interpret this agreement otherwise. Thus, non-returning teachers who fulfilled their contractual obligations are entitled to health and dental benefits for the entire term of

the negotiated agreement ending on August 15, 2001.

[¶ 14.]   Affirmed.

[¶ 15.]   GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.