2004 SD 127

**Bonnie WIRT, Petitioner and Appellant,**

v.

**PARKER SCHOOL DISTRICT # 60–4 and Parker Board of Education, Respondents and Appellee.**

**No. 23186.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 4, 2004.

Decided Nov. 23, 2004.

Anne Plooster, South Dakota Educ. Ass'n, Pierre, SD, for petitioner and appellant.

Thomas H. Harmon of Tieszen Law Office, Pierre, SD, for respondents and appellee.

ZINTER, Justice.

[¶ 1.] Bonnie Wirt retired from the Parker School District after 39 years of teaching. Before the next school year started, she came out of retirement and accepted a new one-year contract of employment for the amount teachers without "continuing contract status" were paid. At the end of the new one-year contract, Wirt was terminated without the tenure protections given to continuing contract status teachers. Wirt appealed to the circuit court contending that she had continuing

contract status notwithstanding her retirement. The circuit court disagreed and granted summary judgment in Parker's favor. We affirm.

**Facts and Procedural History**

[¶ 2.] The facts are not in dispute. Wirt was a continuing contract teacher with 39 years of experience. On March 11, 2002, the Parker School Board decided to reduce her kindergarten position from full-time to half-time for the 2002–2003 school year.[1] Wirt held the full-time position at a salary of $34,064. On April 26, 2002, she accepted the half-time position at a salary of $17,032, which was one half of her full-time salary as a continuing contract teacher.

[¶ 3.] On May 23, 2002, Wirt apparently changed her mind and resigned from the half-time teaching position, indicating that she was going to retire. The Board accepted her resignation on June 10, 2002. Upon retirement, Wirt was fully paid for her 2001–2002 contract, she received a payout of her accumulated sick leave, she ended her contributions to the South Dakota Retirement System (SDRS), and she began receiving her SDRS retirement benefits.

[¶ 4.] The Parker School District continued to seek a teacher to fill the 2002–2003 half-time position. Wirt subsequently decided to come out of retirement and apply for the position. On August 12, 2002, the parties came to an agreement, and Wirt signed a one-year contract at a reduced salary of $15,900.96. The reduced salary was the amount the District paid non-continuing contract teachers with Wirt's education and experience. Wirt did not contest the reduced salary.

[¶ 5.] Wirt taught the half-time kindergarten class during the 2002–2003 school year. However, on March 31, 2003, the Board voted to nonrenew her contract for the 2003–2004 school year. Wirt was notified of the Board's decision and requested the due process hearing that continuing contract teachers are entitled to receive under SDCL 13–43–6.2. The Board denied Wirt's request because it believed that, as a result of her retirement, she was no longer a continuing contract teacher.

[¶ 6.] Wirt appealed to circuit court pursuant to SDCL 13–46–1.[2] The circuit court granted Parker summary judgment, concluding that Wirt's retirement terminated her status as a continuing contract teacher. Wirt appeals raising the issue whether her resignation terminated her continuing contract status.

**Analysis and Decision**

[¶ 7.] This matter is before the Court on appeal from the circuit court's grant of summary judgment. Our standard of review of summary judgments was stated in *Kimball Investment Land, Ltd. v. Chmela*:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of

---

1. There is no allegation that this reduction violated Wirt's rights.

2. SDCL 13–46–1 provides:
   From a decision made by any school board, or by a special committee created under any provision of the school law relative to a school or school district matter or in respect to any act or proceeding in which such officer, board, or committee purports or assumes to act, an appeal may be taken to the circuit court by any person aggrieved, or by any party to the proceedings, or by any school district interested, within ninety days after the rendering of such decision. Provided, however, that all legal actions relative to bond issues must be started within ten days.

law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

2000 SD 6, ¶ 7, 604 N.W.2d 289, 292 (internal citations omitted).

[¶ 8.] The effect of Wirt's resignation on her continuing contract status is a question of first impression in this jurisdiction. Wirt concedes that if she lost that status, the District could nonrenew her 2003–2004 teaching contract without just cause or hearing. However, Wirt contends that she was a continuing contract teacher, and as such, she should have been afforded the rights and protections in SDCL 13–43–6.1 (termination only for just cause)[3] and SDCL 13–43–6.2 (teacher must be furnished statement of reasons for termination and a hearing to refute them).[4]

[¶ 9.] SDCL 13–43–6.3[5] defines continuing contract status. We construe such statutes under the following rules:

The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Moreover, "[i]n arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning." "SDCL 2–14–1 requires that words in a

---

3. SDCL 13–43–6.1 provides:

> A teacher may be terminated, by the school board, at any time for just cause, including breach of contract, poor performance, incompetency, gross immorality, unprofessional conduct, insubordination, neglect of duty, or the violation of any policy or regulation of the school district.

4. SDCL 13–43–6.2 provides:

> The superintendent or the school board shall give written notice of the termination to the teacher; a written statement of the reasons for the termination; access to the employment records of the teacher; the opportunity to the teacher for a hearing before the school board to present reasons in person or in writing why the termination should not occur; and the opportunity to be represented. The hearing provided by this section shall be requested within fifteen days after receipt of the notice. The school board shall conduct the hearing not sooner than fourteen days, nor later than forty-five days, after receipt of the teacher's request for hearing. The parties may waive the time limitations provided for in this section.

5. SDCL 13–43–6.3 provides:

> Until a teacher is in or beyond the fourth consecutive term of employment as a teacher with the school district, a school board may or may not renew the teacher's contract. The superintendent or school board shall give written notice of nonrenewal by April fifteenth but is not required to give further process or a reason for nonrenewal. After a teacher is in or beyond the fourth consecutive term of employment as a teacher with the school district, §§ 13–43–6.1 and 13–43–6.2 apply to any nonrenewal of the teacher's contract. On or before April fifteenth, the school board shall notify the teacher in writing of its intention to not renew the teacher's contract.
>
> Acceptance by the teacher of an offer from the district to enter into a new contract with the teacher shall be in the manner specified in the offer. Failure of the teacher to accept the offer in the manner specified shall result in the termination of the existing contract between the teacher and the district at the end of its term.

statute are to be understood in their ordinary sense."

*In re West River Elec. Ass'n, Inc.*, 2004 SD 11, ¶ 21, 675 N.W.2d 222, 228 (internal citations omitted).

[¶ 10.] The pertinent language of SDCL 13–43–6.3 provides that continuing contract status is afforded for "a teacher [that] is in or beyond the fourth consecutive term of employment...." The meaning of the words "consecutive" and "term of employment" are dispositive. Wirt suggests the term "consecutive" means successive or to follow successively without interruption. We agree.

[¶ 11.] To define the phrase "term of employment," Wirt relies on an Attorney General's Opinion that defined a "term of employment" as the "ordinary school term." However, the 1980 Op. Att'y Gen. interpreted a predecessor statute that has been repealed.

[¶ 12.] This Court, in a different context, has also considered the meaning of a teacher's term of employment. We held that for the purpose of receiving health benefits under a negotiated master contract, "[n]on-returning employees maintain their status as employees until the expiration of the negotiated agreement." *Hill City Educ. Ass'n v. Hill City School Dist. 51–2*, 2004 SD 47, ¶ 13, 678 N.W.2d 817, 821. However, we specifically noted that we did not interpret that case to "include those employees who ... retired or voluntarily quit ..." *Id.* ¶ 4, n. 3. Thus, *Hill City* is also inapplicable.

[¶ 13.] Wirt contends that she should be deemed to be in consecutive "terms of employment" because:

[S]he incurred no break in service from the 2001–2002 to the 2002–2003 school year. With no break in service, her employment with the District was continuous and she was in or beyond her fourth consecutive term of employment.

However, this argument overlooks two significant facts. First, after the 2001–2002 school year, Wirt retired, withdrew her accumulated sick leave,[6] and voluntarily severed her employment relationship with the District. Second, when Wirt was reemployed, she returned under a one-year employment contract for non-continuing contract teachers.

[¶ 14.] Wirt also overlooks legal authorities generally holding that there is a break in service upon resignation. "[A] teacher's contract of employment may be terminated by ... resignation ... [if] offered by the teacher with intent to terminate ... employment...." *Johnson v. Vernon Parish School Bd.*, 670 So.2d 373, 375–376 (La.Ct.App.1996) (concluding that the employment contract between a teacher and the school board was terminated when the teacher voluntarily resigned). Accordingly, one annotation collects cases from eleven states taking the view that, although different statutory schemes are construed, resignation terminates tenure, *i.e.* continuing contract status. *See generally*, Michael G. Walsh, Annotation, *Termination of Teacher's Tenure Status by Resignation*, 9 A.L.R.4th 729 (2004).[7]

---

6. The negotiated agreement between Parker and the Teacher's Union stated:

> If after fifteen (15) years of continuous employment, a certified employee *leaves the school system,* said employee shall be reimbursed for one-third of his/her accumulated sick leave days available at the close of the school year at a rate of $100 per day. (Emphasis added.)

7. Citing; *National Educ. Ass'n. Inc. v. Lee County Bd. of Public Instruction*, 467 F.2d 447, 452 (5thCir.1972); *Kilgore v. Jasper City Bd. of Educ.*, 624 So.2d 603, 604–605 (Ala. Civ.App.1993); *Evard v. Bd. of Educ. of City of Bakersfield*, 64 Cal.App.2d 745, 149 P.2d 413, 416 (1944); *Gardner v. Hollifield*, 96 Idaho 609, 533 P.2d 730, 732 (1975); *Miller v. Barton School Township of Gibson County,*

[¶ 15.] The most apposite of these cases is *Kilgore v. Jasper City Bd. of Educ.* because it specifically determined "whether a teacher loses his or her tenure if he or she resigns at the end of one school year and is rehired by the same Board before the beginning of the next school year." 624 So.2d 603, 604 (Ala.Civ. App. 1993). The analytically similar tenure statute construed in *Kilgore* provided "that a teacher shall attain continuing service status (tenure) when 'such teacher shall have served under contract as a teacher in the same . . . school system for three consecutive school years and . . . be reemployed in such . . . school system the succeeding school year.' " *Id.* at 605. The facts of that case reflected that a tenured teacher tendered his resignation in May, 1990, effective June, 1990, and the Board of Education (BOE) accepted the resignation the same day it was tendered. The teacher later sought to rescind, retract, or withdraw the resignation, but the BOE reaffirmed the resignation. The teacher then applied for his old job and was reemployed on the understanding that, because the BOE had accepted his resignation, he would return as a probationary teacher. Because Kilgore accepted the new, noncontinuing contract status contract, the court held that "resignation and acceptance thereof effectively and lawfully terminated his employment as a teacher and eliminated his property and tenure rights to that job." *Id.* at 605 (quoting *Swann v. Caylor,* 516 So.2d 699, 701 (Ala.Civ.App. 1987)).

[¶ 16.] The same situation applies here. Wirt's resignation was a complete termination of her employment relationship with the Parker School District. In an affidavit supporting Parker's motion for summary judgment, General Counsel for SDRS related that "a public school teacher . . . must fully terminate employment with a [school district] and have no guarantee of future employment with that employer in order to receive" the retirement benefits that Wirt received. So also, Wirt could not have withdrawn her accumulated sick leave unless she had "left the school system." *See supra* n. 6. Thus, there was a break in Wirt's term of employment with Parker. Indeed, all of Wirt's actions, from her resignation through her reemployment, indicated that there was a break in her employment with this school district. The question then becomes whether, through this voluntary break in employment, Wirt waived her continuing contract status.

[¶ 17.] A teacher may waive his or her continuing contract status even in states with statutes that do not require continuous terms of employment. Ultimately, "[w]hile a teacher is entitled to abandon his or her tenure rights, whether the teacher actually abandons those rights depends on his or her 'intention with respect to the matter.' " *Lucio v. School Bd. of Independent Sch. Dist. No. 625, St. Paul, Minnesota,* 574 N.W.2d 737, 742 (Minn.Ct.App.1998) (citing *Board of Educ. of City of Minneapolis v. Sand,* 227 Minn. 202, 34 N.W.2d 689, 694 (1948)).

[¶ 18.] Here, all of Wirt's actions reflected an intent to abandon her continuing contract status. First, she voluntarily

215 Ind. 510, 20 N.E.2d 967, 968 (1939); *Carpenter v. Bd. of Educ. of Owsley County,* 582 S.W.2d 645, 646 (Ky.1979); *Pitcher v. Iberia Parish School Bd.,* 280 So.2d 603, 605 (La.Ct.App.1973); *Carson City School Dist. v. Burnsen,* 96 Nev. 314, 608 P.2d 507, 508 (1980); *Atencio v. Bd. of Educ. of Penasco*

*Independent School Dist. No. 4,* 99 N.M. 168, 655 P.2d 1012, 1016 (1982); *State ex. rel. Ford v. Bd. of Educ. of City School Dist. of City of Cleveland,* 141 Ohio St. 124, 47 N.E.2d 223, 225 (1943); *Jacobs v. School Dist. of Wilkes–Barre Tp.,* 355 Pa. 449, 50 A.2d 354, 356 (1947).

resigned and began retirement under circumstances requiring an intent to completely sever her employment relationship with no reemployment rights. Second, she withdrew her accumulated sick leave, something that was possible only if she had permanently left the school district. Finally, after seeking new employment with the school district after retirement, she accepted a new contract that contained terms applicable to non-continuing contract teachers. Under such circumstances, where a teacher resigns, the school board accepts the resignation, and the teacher voluntarily enters into a one-year teaching contract without protest, the teacher waives the right to a continuing contract of employment. *See State ex rel. Brubaker v. Hardy,* 5 Ohio St.2d 103, 214 N.E.2d 79 (1966) (citation omitted).

[¶ 19.] Wirt, however, argues that she could not waive continuing contract status because that status is based on statutory public policy and is not contractual in nature. However, waiver may occur whether the right is conferred by statute or by contract. "[W]aiver occurs when: [o]ne in possession of any right, *whether conferred by law or by contract,* and with full knowledge of the material facts, does or forbears the doing of something inconsistent with the exercise of the right." *Flugge v. Flugge,* 2004 SD 76, ¶ 18, 681 N.W.2d 837, 842 (citation omitted) (emphasis added).

[¶ 20.] It is also significant that there is no evidence of school district conduct attempting to violate the spirit of the continuing contract law. Instead, Wirt unilaterally and voluntarily waived her continuing contract status by resignation and retirement. Therefore, this type of waiver does not violate public policy. The purpose of continuing contract statutes "is to provide teachers with employment security and to prevent dismissals without

cause." *Hicks v. Gayville–Volin School Dist.,* 2003 SD 92, ¶ 14, 668 N.W.2d 69, 75. *See Nordhagen v. Hot Springs School Dist. No. 23–2,* 474 N.W.2d 510, 513 (S.D. 1991); *Jager v. Ramona Bd. of Educ., Ramona School Dist.,* 444 N.W.2d 21, 27 (S.D.1989). Wirt was not deprived of that protection at any time prior to *her* decision to voluntary resign and terminate her employment relationship with the Parker School District.

[¶ 21.] We finally note that there is nothing in the statutes or case law indicating that the purpose of the continuing contract law is to enable teachers to retain their status *indefinitely,* even after a voluntary resignation and termination of the employment relationship. On the contrary, "if school districts could not hire retired teachers without thereby immediately returning them to continuing contract status, 'retirement' would be illusory: 'retired' teachers would be able to bump less-senior 'permanent' teachers." *Thomas v. Independent School Dist. No. 2142,* 639 N.W.2d 619, 622 (Minn.Ct.App.2002).

[¶ 22.] Consequently, we see no violation of public policy here. We agree that "as long as a resignation on the part of a teacher is voluntary and without coercion or duress, it will serve to break the continuity required under the tenure law and is not against public policy." *Williams v. Lafeyette Parish School Bd.,* 533 So.2d 1359, 1362 (La.Ct.App.1989) (citations omitted).

[¶ 23.] Affirmed.

[¶ 24.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.